1996 SD 41

**Stacy DUSSART, Plaintiff and Appellant,**

v.

**Michael R. DUSSART, Defendant and Appellee.**

**No. 19010.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1995.

Decided April 17, 1996.

Lelia L. Hood of Wurm and Hood, Prof. L.L.C., Rapid City, for plaintiff and appellant.

Mitchell D. Johnson, Rapid City, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1] Stacy A. Dussart appeals from a decree of divorce, challenging the sufficiency of her rehabilitative alimony award, as well as the trial court's refusal to award attorney fees. We affirm in part, reverse in part, and remand.

### FACTS

[¶ 2] Michael R. Dussart and Stacy were married approximately ten years at the time they were divorced. Stacy's complaint sought a divorce on irreconcilable differences. Later, after Michael had answered the complaint and without seeking leave of court to amend, Stacy served and filed an amended complaint. This amended complaint alleged additional grounds for divorce based on fault. Following trial, a divorce was granted on irreconcilable differences and Stacy was awarded rehabilitative alimony of $200 per month for thirty-six months

### ISSUES

[¶ 3] I. **Did the trial court err in granting Stacy a divorce on the basis of irreconcilable differences rather than upon fault?**

[¶ 4] Stacy argues the trial court should have granted her a divorce on the grounds of emotional cruelty and adultery; she did not consent to a "no-fault" divorce and her amended complaint did not aver irreconcilable differences. She also claims Michael should be deemed to have admitted fault as alleged in her amended complaint because he filed no amended answer and

because evidence of fault was presented at trial and thus was tried by implied consent of the parties. We disagree.

[¶ 5] True, a divorce may not be granted on irreconcilable differences unless both parties consent. *Osman v. Keating–Osman*, 521 N.W.2d 655, 656 (S.D.1994); SDCL 25–4–17.2. In this case, however, Stacy's own original complaint sought a divorce on the grounds of irreconcilable differences. Nothing in the record shows Stacy legally discarded irreconcilable differences as an alternative basis for the divorce: her amended complaint was not properly before the court. In granting the divorce, the trial court expressly ruled on the basis of Stacy's original complaint alleging irreconcilable differences. The record is replete with evidence of the substantial differences between the parties from which the trial court could conclude irreconcilable differences existed and were consented to by both parties as the basis of the divorce.

[¶ 6] Issues tried by implied consent are to be treated as if they were regularly raised by the pleadings. *Wasserburger v. Consolidated Mgmt. Corp.*, 502 N.W.2d 256, 261 (S.D.1993). Yet at no time—not during trial, after trial, or even after filing of the judgment—did Stacy move to have the pleadings conform to the evidence on fault to support her contention the issue was tried by implied consent. As no such motion was made, Stacy's argument that SDCL 15–6–15(b) permits amendments to pleadings even after judgment is misplaced. Stacy did make a proposed finding on this point, but that does not satisfy the requirement that a motion be made to the trial court to amend the pleadings. We have consistently adhered to the principle that a complaining party must give the trial court an opportunity to consider claimed irregularities and rule on them. *See Miller v. Hernandez*, 520 N.W.2d 266, 271–72 (S.D.1994). Stacy failed to do so here.

[¶ 7] Likewise, her argument that Michael should be deemed to have admitted fault based on his failure to respond to her amended complaint assumes she properly pleaded fault as an issue for trial. Stacy never sought or received court approval to file an amended complaint as required by SDCL 15–6–15(a). We find no abuse of discretion in awarding a divorce on irreconcilable differences.

[¶ 8] **II. Did the court abuse its discretion in awarding only $200 a month in rehabilitative alimony?**

[¶ 9] Stacy argues she is entitled to substantially more rehabilitative alimony. Our standard of review in challenges to such awards was recently reiterated in *DeVries v. DeVries*, 519 N.W.2d 73, 77 (S.D.1994). A trial court is vested with discretion in awarding alimony and its decision will not be disturbed unless it clearly appears the trial court abused its discretion. *Id.* Trial courts must consider the following factors when setting an alimony award: (1) the length of the marriage; (2) the parties' respective ages and health; (3) the earning capacity of each party; (4) their financial situations after the property division; (5) their station in life or social standing; and, (6) the relative fault in the termination of the marriage. *Id.* A trial court's findings on these factors must support its legal conclusions. *See, e.g., Fox v. Fox*, 467 N.W.2d 762 (S.D.1991) (where trial court's findings justified award of alimony, no abuse of discretion occurred in determining wife was entitled to alimony). As often stated, an abuse of discretion exists only where discretion has been "exercised to an end or purpose not justified by, and clearly against, reason and evidence." *DeVries*, 519 N.W.2d at 75.

[¶ 10] A review of the findings of fact and conclusions of law entered by the trial court in support of its judgment demonstrates the court considered all the necessary factors, including the duration of the marriage, the traditional roles assumed by Stacy as homemaker and mother, and by Michael as a career military member. Findings were also made on Stacy's ability to attain only minimum wage employment if she obtains no additional education, and her desire for further education in the dietary field. The court also considered the health of the parties, noting that Michael is in good health

and that Stacy is in fair health, and suffers from damage to her sciatic nerve.

[¶ 11] Stacy's appeal is based upon her belief the trial court's award of $200 per month for thirty-six months is inadequate, because she will not be self-sufficient in three years. Her brief portrays her perceived need for additional support, but does not demonstrate any particular manner in which the trial court's discretion was abused in setting the amount of alimony. Stacy's claim for rehabilitative alimony is based on her plan to obtain additional education as a dietitian. At trial, she testified her proposed two-year program of full-time study will cost approximately $2,200 per year, or about $200 a month, and she would also incur day care expenses while in class. On cross-examination she stated she would have to enroll as a part-time student and expected it would take more than two years to complete the dietitian course.

[¶ 12] From her own testimony it is plain, Stacy was awarded alimony consistent with her anticipated educational costs. Indeed, she was awarded $200 per month for three years, presumably to take into account the fact that she will not be a full-time student but will still incur some day care expenses. Moreover, the court ordered Michael to pay eighty percent of the child care expenses while Stacy is a student. On appeal, Stacy is essentially seeking to relitigate the amount of alimony, rather than demonstrating the manner in which the amount awarded by the trial court is against reason and evidence.

[¶ 13] We cannot retry factual issues decided by the trial court, even if we would not have made the same decision had we been sitting as trial judges. *See People in Interest of A.R.P.*, 519 N.W.2d 56, 61 (S.D. 1994). Stacy has not established any sound reason to abandon this logic or to reverse the trial court. Further, in the event it appears in the future the alimony award was insufficient, Stacy can return to court to seek a modification. *Saxvik v. Saxvik*, 544 N.W.2d 177 (S.D. 1996). The alimony award is affirmed.

[¶ 14] **III. Did the trial court err in not admitting evidence of Stacy's anticipated future expenses?**

[¶ 15] As a continuation of the argument advanced in the previous issue, Stacy contends she should have been permitted to present evidence on what her expenses will be in the future to justify a higher alimony award. Apparently, these estimates were based on the assumption she would move to another city and enroll in school. She bases her argument on the legitimate notion that future expenses may be a proper consideration in setting alimony.

[¶ 16] Yet contrary to her assertion, the trial court did admit Stacy's projections, thus the court had this evidence available in reaching its decision. In *DeVries* we observed that anticipated expenses are not a definitive factor in setting an alimony award, although they may be considered. 519 N.W.2d at 77. Stacy's exhibit was, in fact, considered. Her assertion the trial court did not consider her needs and income in setting the amount of alimony is in direct conflict with the record and the actual findings of fact and conclusions of law.

[¶ 17] **IV. Did the trial court abuse its discretion in refusing to award Stacy attorney fees?**

[¶ 18] Finally, Stacy asserts the court abused its discretion in failing to award attorney fees to her. SDCL 15–17–38 authorizes awards of attorney fees in domestic relations cases. *Jopling v. Jopling*, 526 N.W.2d 712, 717 (S.D.1995). In deciding whether to award attorney fees, the trial court considers such factors as the relative financial condition of the parties, the relative fault of the parties in prolonging litigation, the complexity of the issues, whether briefs were required and whether the case was appealed. *Schwab v. Schwab*, 505 N.W.2d 752, 756 (S.D.1993). An award of attorney fees is a matter of discretion and a trial court's decision will not be reversed absent an abuse of that discretion. *Kappenman v. Kappenman*, 523 N.W.2d 410, 414 (S.D.1994).

[¶ 19] At trial Michael admitted he created a secret bank account during the

marriage which he used to pay his attorney fees. He concealed at least $2,900 of marital funds in this account while he was earning $30,000 to $40,000 per year and Stacy was working seventeen hours a week for $6.00 an hour. In dividing the marital assets the trial court credited Stacy with her share of this money, but nevertheless, considering Michael's conduct and with such a stark disparity in income and earning capacity, we conclude the court abused its discretion in denying attorney fees to Stacy. *See Kappenman.* We remand this issue to the trial court for an award of reasonable trial level attorney fees.

[¶ 20] **V. Is either party entitled to appellate attorney fees?**

[¶ 21] Both Stacy and Michael have filed motions for attorney fees, together with itemized statements of expenses incurred on appeal. *See Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D.1987). We award to Stacy fees of $2,500.

[¶ 22] Affirmed in part, reversed in part, and remanded.

[¶ 23] AMUNDSON and GILBERTSON, JJ., concur.

[¶ 24] MILLER, C.J., and SABERS, J., concur in part and dissent in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

[¶ 25] I dissent as to issue two.

[¶ 26] I believe the trial court abused its discretion in limiting rehabilitative alimony to merely $200 per month. Rehabilitative alimony is appropriate where a lump-sum or short-term award of support is necessary to permit a spouse to achieve economic self-sufficiency or to improve or refresh job skills. *Parsons v. Parsons*, 490 N.W.2d 733, 738 (S.D.1992); *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 261 (S.D.1984). Rehabilitative alimony is awarded to enable a former spouse " 'to obtain the educational skills she needs to fend for herself in life.' " *Ryken v. Ryken*, 440 N.W.2d 300, 303 (S.D.1989) (quoting *Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D.1987)).

[¶ 27] The trial court does not seem to have acknowledged the disparity in the parties' post-divorce income. After alimony and child support deductions, Michael will have approximately $1,530 per month net income for his *sole support.* In contrast, including alimony, child support, and earnings, Stacy must support herself *and her two children* on a net monthly income of $1,281. I cannot agree that an alimony award which essentially covers tuition and book expenses will ensure Stacy's self-sufficiency. Her basic living expenses while a student should also be considered when setting rehabilitative alimony. The trial court's award fails to equitably apportion income between the parties during this transitional period.

[¶ 28] I am particularly troubled by the trial court's miserly alimony award, because I believe factors relevant to setting alimony weigh heavily in favor of Stacy. While the parties are about the same age, their health is quite different. Michael is in good health, whereas, Stacy has sciatic nerve damage that causes her pain and limits the kind of physical labor she can perform. Stacy also has clinical depression, which she treats with medication.

[¶ 29] The earning capacity of the parties is sharply divergent. Without additional education and training, the court found Stacy "is primarily limited to essentially minimum wage jobs." Assuming a forty-hour work week at the minimum wage of $4.25 per hour, Stacy's annual earning capacity is $8,840. Meanwhile, the trial court found Michael's earnings are in the "upper $30,000 to $40,000 range." Likewise, the social standing of the parties after their divorce is very different. Michael is a gunnery sergeant in the United States Marines. Stacy is a manual laborer, currently performing part-time work in a school cafeteria.

[¶ 30] Additionally, the trial court's conclusion that the parties were equally at fault in the termination of the marriage is contrary to the evidence presented to the court. Michael admitted to having five affairs during the course of the marriage. Stacy testified that she first became aware of Michael's infidelity when she was pregnant with their second child and he advised her that she

should have a syphilis test. Later in this pregnancy, Stacy opened a love letter addressed to Michael that referred to sexual encounters Michael had with another woman. Stacy also received numerous telephone calls from women who were interested in dating Michael and expressed surprise that he was married. Shortly before their separation and divorce, Stacy found a cross-stitch picture that another woman had recently given to Michael. It featured two intertwined hearts and read: "Two hearts in love beat as one. I'll love you forever. Love Cindy." Michael was removed from his post as a Marine recruiter due to a temper outburst and an affair he had with still another woman in the fall of 1993. Stacy testified that Michael was verbally abusive, telling her she never did anything right and was fat, ugly, and stupid. Michael admitted to calling Stacy names on occasion.

[¶ 31] Except for a claim that he was unfaithful with a prostitute, Michael did not dispute the extramarital affairs that Stacy described. Michael claimed Stacy did not give him enough attention. He contended she was affectionate and loving only when she wanted something from him. Referring to one of his affairs, Michael testified, "I know it was wrong, but I wasn't getting any attention at home, and I figured—at one point, I figured life was too short for that kind of mediocrity."

[¶ 32] I cannot agree that Stacy's alleged inattentiveness and "mediocrity" was on par with Michael's persistent and unabashed infidelity. Even acknowledging that we review a cold record, it is inconceivable that Michael experienced the same humiliation and betrayal that Stacy felt as a result of his blatant unfaithfulness.

[¶ 33] Michael's deviousness went beyond his numerous affairs and spilled into the parties' finances. As the majority notes, he had a secret bank account during the marriage. After telling his wife he wanted a divorce, he conveniently used funds from this secret account to pay his own attorney fees. Michael hid these marital funds while he was earning $30,000 to $40,000 per year and Stacy was working seventeen hours a week for $6.00 per hour.

[¶ 34] Finally, when awarding rehabilitative alimony, the trial court should consider a spouse's foregone opportunities to enhance or improve professional or vocational skills. *Parsons*, 490 N.W.2d at 735. Although Michael testified that he wanted his wife to pursue education and a career during their marriage, he later stated he did not want his children "raised by a baby-sitter." He told his wife, "Look, if we have kids right away, you've got to be home with them." Stacy testified that she was prevented from pursuing an education and job training because of her husband's insistence that she remain at home with the children.

[¶ 35] Based on the evidence presented, I believe it was against reason and evidence to award only $200 per month in rehabilitative alimony. Stacy, who will be raising the couple's children while working toward a new career, should not live in near poverty while her former husband lives in relative comfort.

[¶ 36] I concur as to all remaining issues.

[¶ 37] I am authorized to state that Justice SABERS joins in this writing.