2002 SD 39

**Albert W. JOSEPH and Elderly and Disabled Services, Inc., Plaintiffs and Appellants,**

v.

**Jayne F. KERKVLIET and Convent of Sacred Heart a/k/a Benedictine Sisters, Defendants and Appellees.**

No. 21988.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Decided March 20, 2002.

Terry L. Pechota of Viken, Viken, Pechota, Leach & Dewell, Rapid City, South Dakota, for plaintiffs and appellants.

Michael F. Marlow, Shiela F. Woodward of Johnson, Heidepriem, Miner, Marlow & Janklow, Yankton, South Dakota, for defendants and appellees.

KONENKAMP, Justice.

[¶ 1.] This appeal challenges two decisions of the trial court, first, that certain evidence was improperly excluded from the jury's consideration, and, second, that, in this motor vehicle accident case, cost-of-replacement, not cost-of-repair, should have been the proper measure of damages. We affirm.

### A.

[¶ 2.] On September 6, 1995, Albert Joseph, along with his sister, Elizabeth, and his daughter, Andrea, traveled from Wagner to Yankton in a van owned by Elderly and Disabled Services, Inc. (EDSI). As they entered the Yankton city limits, a vehicle, owned by defendant Benedictine Convent of Sacred Heart and driven by defendant Jayne Kerkvliet, struck the van, causing it to tip onto its side. Joseph, Elizabeth, and Andrea all sustained injuries as a result of the collision. Defendants admitted liability, and the claims of Elizabeth and Andrea were settled. Joseph's claim for damages went to a jury trial.

[¶ 3.] Albert Joseph has had a history of back problems. He had been in a motor vehicle accident in 1992, and he had undergone back surgery some five or six years earlier, as a result of another motor vehicle accident. He also met with two additional traumatic incidents: in 1998, he fell out of a chair while eating at a café in Pickstown, and three months afterwards he slipped and fell on ice at his home. X-rays taken after the first incident revealed injuries that did not appear in the x-rays taken after the 1995 accident. Following the second incident, Joseph reported to his physician in Wagner that he had pain in his lower back.

[¶ 4.] In October, 1999, Joseph consulted Dr. Bruce Johnson, a chiropractor in Mitchell. Dr. Johnson suggested that a spinal fusion operation might be necessary. Accordingly, in December, 1999, Joseph consulted Dr. Doran, a neurologist in Omaha, who later performed that operation in Omaha Methodist Hospital. Defense counsel moved *in limine* to preclude the introduction of evidence concerning Joseph's spinal fusion surgery. The court granted the motion on grounds that Joseph was prepared to offer no relevant expert testimony to the effect that the accident in question necessitated the operation.

[¶ 5.] The trial court also ruled on the proper measure of damages to be paid to EDSI in consequence of damage to its van. After the accident, defendants made immediate arrangements to have the van repaired without authorization from EDSI. The van was repaired in Yankton at a cost of $12,218.52. EDSI refused to accept return of the vehicle, believing it to be unsafe for use in transporting the elderly and infirm. The trial court ruled that the measure of damages was $12,218.52, the cost-of-repair; that EDSI was entitled both to compensation in money for damage to the van and to the van itself, in unrepaired condition; that EDSI was not entitled both to a repaired van and to money in the amount of $12,218.52; and that defendants were to have thirty days from the date of judgment to remove from the van, if they chose, any parts that had been placed on the van in the course of repair.

[¶ 6.] On appeal, we consider the following issues: (1) Did the circuit court err in ruling that evidence of Joseph's operation and its cost were inadmissible? (2) Did the court err in ruling that the cost of repair of the van was the correct measure of damages?

### B.

[¶ 7.] Joseph argues that the trial court committed reversible error in granting the defense motion to preclude the introduction of evidence of his spinal fusion operation.[1] It is settled law in South Da-

---

1. We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *State v. Machmuller*, 2001 SD 82, ¶ 6, 630 N.W.2d 495, 498. To establish that a trial court's evidentiary ruling requires reversal, a party must show not only that the ruling was an

kota that reversible error cannot be predicated upon the *denial* of a motion *in limine*. *State v. Red Star*, 467 N.W.2d 769, 771 (S.D.1991). Our case, however, requires us to rule for the first time on the inverse situation: can a *grant* of a motion *in limine* be grounds for reversible error? Several other jurisdictions have confronted this question and have concluded that the failure to make an offer of proof at trial following the grant of a motion *in limine* waives the issue on appeal. *State v. Norville* is typical:

> A trial court's ruling granting a motion *in limine* is interlocutory only and subject to change during the course of trial; such a ruling, therefore, in and of itself, preserves nothing for appeal. Rather, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof. Such a requirement is strictly applied because a trial judge should be given an opportunity to reconsider [the] prior ruling against the backdrop of the evidence adduced at trial.

23 S.W.3d 673, 685 (Mo.Ct.App.2000) (citations and internal quotations omitted). *See also Keeper v. King*, 130 F.3d 1309, 1315 (8thCir.1997); *State v. Hill*, 75 Ohio St.3d 195, 661 N.E.2d 1068, 1077 (1996); *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803, 808 (1990); *State v. Locklear*, 145 N.C.App. 447, 551 S.E.2d 196, 199 (N.C.Ct.App.2001); *Wilson v. State*, 44 S.W.3d 602, 606 (Tex.App.2001); *Ford v. Herman*, 316 Ill.App.3d 726, 249 Ill.Dec. 942, 737 N.E.2d 332, 340 (2000); *Conway v. Evans*, 549 N.E.2d 1092, 1094 (Ind.Ct. App.1990). We find this reasoning persuasive and hereby adopt the view it supports.

[¶ 8.] Thus, the question becomes whether Joseph made an offer of proof at trial or otherwise attempted to introduce evidence concerning his 2000 spinal fusion surgery. Because he deemed it pointless, Joseph made no attempt at trial to introduce the same evidence the trial court earlier prohibited. But neither did he make an offer of proof on this evidence. Therefore, as a matter of law, we hold that Joseph failed to preserve his objection to the trial court's ruling *in limine* excluding evidence concerning the spinal fusion surgery.

[¶ 9.] Since we are ruling for the first time on the question of preserving a record for appeal, in fairness we will proceed to examine the evidence Joseph presented for the trial court's consideration at the motion hearing. Essentially, Joseph argued that the September 1995 accident necessitated the spinal fusion operation. His evidence for this necessity consisted of his own testimony and that of the chiropractor, Dr. Johnson. The need for spinal fusion surgery is obviously to be determined by appropriate expertise. Joseph was not competent to determine for himself that he needed the operation. All he could say was that he did in fact undergo it and that he was billed $57,909 for the procedure. Dr. Johnson's expertise was limited to the scope of his profession, chiropractic. SDCL 36-5-1, in pertinent part, defines that scope as follows:

> Chiropractic is hereby defined to be the science of locating and removing the cause of any abnormal transmission of nerve energy including diagnostic and externally applied mechanical measures incident thereto.

Absent from this definition is any reference to surgical procedures. In *Logan v. Dayton Hudson Corp.*, the appellate court

---

abuse of discretion, but also that it was prejudicial. *Carpenter v. City of Belle Fourche*,

2000 SD 55, ¶ 7, 609 N.W.2d 751, 756 (citation omitted).

held that the trial court had not abused its discretion in ordering a new trial on grounds that it had improperly admitted a chiropractor's testimony regarding the need for back surgery. 865 F.2d 789 (6thCir.1989). Similarly, it has been held that chiropractors are unqualified to testify concerning the cost of back surgery. *K Mart Corp. v. Rhyne,* 932 S.W.2d 140, 146 (Tex.App.1996). As a chiropractor, Dr. Johnson was, therefore, unqualified to testify about either the need or the cost of Joseph's spinal fusion surgery. And since Joseph offered no evidence that Dr. Johnson was otherwise qualified so to testify on that point, the trial court did not abuse its discretion in granting the motion *in limine* not to admit his testimony.

### C.

[¶ 10.] Plaintiff EDSI argues that it should receive the full market value of the van in its condition before the accident. However, "when a motor vehicle has been damaged by the negligence of another, the proper measure of damages is the cost of repairs and the value of its use during the time it is being repaired." *Thormahlen v. Foos,* 83 S.D. 558, 564, 163 N.W.2d 350, 353 (1968). Furthermore, as the trial court noted, a property owner is entitled to the full market value only if the property is totally destroyed in the accident. *See* 22 Am.Jur.2d Damages § 429 (1988). According to the stipulated facts, the van could be safely and effectively repaired at a cost less than its full market value. As noted above, the trial court ruled, therefore, that cost-of-repair was the appropriate measure of damages.[2]

[¶ 11.] Affirmed.

[¶ 12.] GILBERTSON, Chief Justice, and SABERS and AMUNDSON, Justices, and GORS, Acting Justice, concur.

---

**2.** Defendants had the van repaired without EDSI's authorization. The trial court found that in so doing defendants frustrated EDSI's right to be compensated in money. EDSI refused to accept the van in its repaired condition, believing it to be unsafe. The record includes evidence to the contrary. In any case, as the trial court noted, EDSI had the option of accepting $12,218.92 along with the van returned to something approximating its unrepaired state and then selling the van for its salvage value of $3,002.00.