#23930-a-JKM

**2006 SD 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ANGELA WALKER,                                   Plaintiff and Appellant,

    v.

JASON WALKER,                                    Defendant and Appellee,

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

REV. CAITLIN F. COLLIER             Attorney for plaintiff
Vermillion, South Dakota            and appellant.

JOHN R. VON WALD of
Von Wald Law Offices                Attorney for defendant
Selby, South Dakota                 and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 23, 2006

OPINION FILED **07/26/06**

#23930

MEIERHENRY, Justice

[¶1.] After eleven years of marriage, Angela Walker (Angela) filed for divorce from her husband, Jason Walker (Jason). After a one-day trial, the trial court granted the parties a divorce based upon irreconcilable differences and ordered joint legal custody of the children, but granted primary physical custody to Jason. Angela appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶2.] Angela and Jason were married on May 19, 1994, in North Carolina. In March 1995, the couple returned to Jason's hometown of Selby, South Dakota. They made their home on the farmstead owned by Jason's parents and great uncle. The couple had a son in 1995 and a daughter in 1999. During the marriage, Jason worked as a truck driver, a farm worker, and a welder. Initially, Angela stayed home with the children and worked a few hours a month at a printer's office. Later in the marriage, Angela worked at a nursing home.

[¶3.] The children enjoyed their life on the farm. They spent significant amounts of time with Jason's mother and father, the children's grandparents. They joined their father and grandfather on over-the-road trucking trips and on the tractor for farm chores. They also spent time with their grandmother playing games and swimming at a nearby pool. The children had several pets, including cats, a duck, cattle, and horses.

[¶4.] The parties had significant financial difficulties throughout their marriage. They used credit cards to pay for medical bills. Despite financial assistance from friends and family, the couple wrote multiple bad checks. Because

-1-

Angela signed the checks, she received several criminal citations for insufficient funds.

[¶5.]    As the relationship between Angela and Jason began to deteriorate, the couple's arguments became more frequent and more confrontational. In early August of 2004, Jason began to suspect that Angela was having an affair. At Jason's direction, Angela left the marital home for a period of time. She returned on August 16, 2004, to visit the children, and an argument ensued. According to Angela, Jason pushed her and locked her in the bathroom. After he let her out, he dumped out her purse. When Angela attempted to grab the purse, her fingers became entwined in the purse strings. During the tussle with the purse, one of Angela's fingers was broken in two places. Angela went to the emergency room, where she was interviewed by Deputy Charles Davidson (Davidson). Davidson testified that Angela did not want to press charges against Jason. Angela told Davidson that her injury was the result of a fight over her purse and that there had been no other physical contact. She also stated that the children were fine with Jason.

[¶6.]    After the incident, Angela told others that her injury was an accident. Angela, however, proceeded to file a temporary protection order petition, which she later dismissed. Then, on August 20, 2004, Angela filed for divorce "based on irreconcilable differences, or in the alterative, extreme mental cruelty." The court granted Angela temporary custody of the children, and she moved to an apartment in Mobridge, where the children attended school. The children began counseling. After a few months of treatment, the children's counselor recommended that the son

see a male counselor. She also cautioned Angela against bringing an adult male companion into the children's lives.

[¶7.] Angela was unable to find a suitable counselor for her son. She did not feel comfortable with the local male counselor, and she could not afford to take the boy to Aberdeen for counseling. Thus, he did not receive further counseling. Additionally, Angela introduced the children to her male companion, despite the counselor's admonition. Even though the children were living primarily with Angela, they continued to spend time with Jason and his parents.

[¶8.] Upon Jason's request, the court ordered a custody evaluation. The parties agreed that an evaluation would be conducted at Jason's expense. After the evaluation was completed, Angela asked Jason to stipulate to its admissibility. Jason refused. Because Angela could not afford to pay the evaluator to appear as a witness, she moved the court to order the evaluation admissible or, in the alternative, to grant a continuance. The trial was continued "by agreement of the parties and approval of the court."

[¶9.] Subsequently, a court trial was held. The court heard testimony from Angela, Jason, the children's counselor, Angela's male companion, Davidson, Jason's parents, two of Angela's friends, Jason's aunt, and the children's babysitter. Since the evaluator did not testify, the custody evaluation was not offered as evidence. At the close of the trial, Angela requested that the court find extreme cruelty as grounds for divorce. Jason contested the extreme cruelty claim, but indicated he would agree to Angela's alternatively pleaded ground of irreconcilable differences. Angela declined to agree to irreconcilable differences. Considering all

of the testimony, the trial court determined that Angela failed to prove extreme cruelty. The court asked the parties to submit arguments as to why he should not grant a divorce based on the alternative ground of irreconcilable differences. Ultimately, the court granted the divorce based on irreconcilable differences and awarded the parties joint legal custody of the children, but the court gave primary physical custody to Jason. Angela appeals the trial court's decision and we consider the following issues[1]:

## ISSUES

1. Whether the trial court erred in granting the divorce based on irreconcilable differences.

2. Whether the trial court erred in awarding primary physical custody to Jason.

3. Whether the trial court erred by not admitting the custody evaluation into evidence.

## DECISION

*Grounds for Divorce*

[¶10.] Angela contests the grounds upon which the trial court granted the divorce. She claims she should have been granted the divorce based on extreme cruelty. The trial court concluded that Angela failed to submit any credible evidence to establish extreme cruelty, but concluded "there [was] more than

---

1. Angela presents two additional issues for our consideration: (1) whether the trial court failed to consider evidence of domestic violence when determining the grounds for divorce, and (2) whether the trial court violated the equal protection rights of Angela and the children by failing to admit the custody evaluation. We consider these issues within the other issues presented by Angela.

sufficient credible evidence to support irreconcilable differences as a ground for divorce." Angela claims that the trial court ignored her evidence of domestic abuse.

[¶11.]    We recently reiterated our standard of review in divorce cases in *Midzak v. Midzak*, wherein we stated:

> The trial court's findings of fact establishing grounds for divorce are not disturbed on appeal absent clear error. "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" We give the trial court's opportunity to judge the credibility of witnesses and to weigh their testimony due regard when reviewing the trial court's findings of fact. We review the trial court's application of law to fact under the de novo standard of review, with no deference to the circuit court's decisions.

2005 SD 58, ¶14, 697 NW2d 733, 737-38 (citations omitted).

[¶12.]    After a review of the record in this case, we cannot find that the trial court's findings of fact were clearly erroneous. SDCL 25-4-4 defines "extreme cruelty" as "the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." Where there is conflicting evidence, we leave to the trial court the task of determining the credibility of the witnesses and the weight to give to their testimony. In this case, Angela testified that Jason often pinned her down or sat on her during arguments, but she could not point to any specific instance of such activity. At trial and on appeal Angela relies primarily on her broken finger as evidence of domestic abuse and grievous bodily injury. The evidence, however, also revealed that she admitted to others that Jason did not mean to break her finger and that the injury was unintentional. Therefore, the trial court's findings of fact on the issue of extreme cruelty were not clearly erroneous.

[¶13.] Angela also argues that the trial court erred when it granted the divorce on the grounds of irreconcilable differences. Angela admits that she pleaded such grounds in the alternative, but she argues that she made clear to the court at trial that she was no longer asserting irreconcilable differences as grounds for the divorce. Nevertheless, Angela did not move to amend her pleadings at any time prior to, during, or after trial. Thus, the trial court determined that Angela consented to the ground of irreconcilable differences by initially pleading it as an alternative ground for the divorce.

[¶14.] A South Dakota statute precludes the divorce of parties on the grounds of irreconcilable differences without the parties' consent. In relevant part, SDCL 25-4-17.2 provides:

> The court may not render a judgment decreeing the legal separation or divorce of the parties on the grounds of irreconcilable differences without the consent of both parties unless one party has not made a general appearance.

We considered the consent requirement of SDCL 25-4-17.2 in *Dussart v. Dussart*, 1996 SD 41, 546 NW2d 109. In *Dussart*, the plaintiff filed a complaint for divorce based on irreconcilable differences. *Id.* ¶2, 546 NW2d at 110. She then served and filed an amended complaint asserting additional grounds based on fault. *Id.* The trial court granted a divorce based on irreconcilable differences. *Id.* On appeal, the plaintiff argued that she did not consent to irreconcilable differences because her amended complaint did not allege that ground. *Id.* ¶4, 546 NW2d at 110-11. Further, the plaintiff argued that evidence of fault was presented at trial "and thus was tried by implied consent of the parties." *Id.*

[¶15.]     We disagreed, however, and affirmed the trial court. *Id.* Citing SDCL 25-4-17.2, we acknowledged that "a divorce may not be granted on irreconcilable differences unless both parties consent." *Id.* ¶5, 546 NW2d at 111. We determined, however, that "[n]othing in the record show[ed the plaintiff] legally discarded irreconcilable differences as an alternative basis for the divorce." *Id.* The plaintiff's amended complaint was not properly before the court because she did not receive court approval to file the amended complaint, and the record was "replete with evidence of the substantial differences between the parties from which the trial court could conclude irreconcilable differences existed and were consented to by both parties as the basis of the divorce." *Id.* Further, "at no time—not during trial, after trial, or even after filing of the judgment—did [the plaintiff] move to have the pleadings conform to the evidence on fault to support her contention the issue was tried by implied consent." *Id.* ¶6, 546 NW2d at 111. The plaintiff's proposed finding on the issue was insufficient to "satisfy the requirement that a motion be made to the trial court to amend the pleadings." *Id.*

[¶16.]     This case presents an issue similar to the issue in *Dussart*. Here, Angela pleaded irreconcilable differences as an alternative ground for divorce. At trial, however, Angela refused to stipulate to irreconcilable differences. Rather, she steadfastly sought a ruling in her favor on extreme cruelty. Angela did not, however, procedurally withdraw her claim for irreconcilable differences.[2] After

---

2.     The relevant portion of the transcript provides:

> The Court:   After considering all of the evidence that's been
>                      presented, weighing the credibility of the witnesses, I find
>                                                                                              (continued . . .)

trial, Jason submitted a letter which urged the trial court to rely on *Dussart* and grant the divorce based on the alternative ground of irreconcilable differences pleaded in Angela's complaint. In its memorandum decision, the court did just as Jason proposed—relied on *Dussart* and granted the divorce based on irreconcilable differences. Angela then moved for reconsideration of the grounds. In her brief and at the hearing on the matter, Angela merely argued that the evidence supported a finding of extreme cruelty.

[¶17.]     Despite knowing that the trial court would not find extreme cruelty, Angela failed to suggest a remedy and failed to provide any argument as to why the *Dussart* case should not apply. Most importantly, she did not make an oral or written motion to amend her complaint or otherwise withdraw her alternative

---

(. . . continued)

> that the plaintiff has failed to establish extreme cruelty. She is not entitled to a divorce on those grounds. If she would like one on irreconcilable differences, there are grounds for that. Would she like a divorce on those grounds?

Ms. Collier (Angela's Attorney): No.

The Court:    Okay. Then the request for a divorce will be denied. We will enter Findings of Fact on that. I will prepare them, and we will proceed however the parties wish to proceed after that. How would you like to proceed, Ms. Collier?

Ms. Collier:  Well, I guess, Your Honor, if there is no divorce, I'm not sure what you do next.

The trial court then proceeded to determine custody, after which it stated:

> I will issue a written decision which will include the decision on the extreme cruelty matter, and then appropriate orders will be prepared, and we will proceed accordingly, and counsel can do some research on how you want to proceed on the fact that we don't have a divorce.

ground of irreconcilable differences. She simply continued to argue that the evidence established extreme cruelty. She provided no reason why the court could not proceed on the alternative ground as originally pleaded.

[¶18.]    Unique to this case and different from *Dussart* is that Angela unequivocally refused to consent to the ground of irreconcilable differences at trial. Like the plaintiff in *Dussart,* however, Angela did not amend her complaint to remove the ground of irreconcilable differences. Since irreconcilable differences remained as an alternative ground in the pleading, Jason was justified in relying on that pleading. Angela's change in strategy at trial without prior notice jeopardized Jason's ability to counter with his own grounds for divorce if he so desired. For example, evidence in the record suggested that he may have been able to counterclaim based on grounds of adultery under SDCL 25-4-2. Since Angela did not "legally discard" irreconcilable differences as an alternative ground for divorce, the trial court did not err by granting the divorce based on irreconcilable differences. By pleading in the alternative, she impliedly consented to irreconcilable differences, thus meeting the requirements of the statute. Therefore, we find that the trial court did not err in granting the divorce based on irreconcilable differences.

*Custody*

[¶19.]    Next, Angela argues that the trial court's determination of custody "did not conform to the evidence presented at trial and was not supported by the law nor the facts." When determining custody, "'the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's

temporal and mental and moral welfare.'" Arneson v. Arneson, 2003 SD 125, ¶13, 670 NW2d 904, 909 (citations omitted). In considering the best interests of the child, "courts should be cognizant of several 'guiding principles.' These include parental fitness, stability, primary caretaker, child's preference, harmful parental misconduct, and separation of siblings." *Id.* (citations omitted). A court need not "make a specific finding in each category; indeed, certain elements may not apply in some cases, and, in others, there may be additional relevant considerations. In the end, our brightest beacon remains the best interests of the child." Zepeda v. Zepeda, 2001 SD 101, ¶13, 632 NW2d 48, 53 (citation omitted). When considering a custody determination on appeal,

> we review a trial judge's decision for error in incorrectly choosing, interpreting, or applying the law; for clear mistakes in fact findings; and for undue emphasis on matters not materially related to the child's welfare. We expect that any decision will be balanced and methodical.

*Arneson*, 2003 SD 125, ¶13, 670 NW2d at 909.

[¶20.]     The trial court made numerous detailed findings concerning the best interests of the children. Angela specifically takes issue with the Court's finding that "Jason has always been extremely involved with the care and nurturing of [the children] as they were growing up" and the statement in the court's memorandum decision that "over the life of these two children, Jason and Angela have equally shared the role of caretaker . . . ." Angela argues that as a stay-at-home mom, she had significantly more contact with the children. She points out that Jason's job as an over-the-road trucker caused him to be gone frequently. She also points out that Jason has missed the children's doctor appointments and school conferences.

[¶21.]     Although Angela's argument has merit, there also is considerable evidence in the record which supports the trial court's decision. The trial court recognized that "both Jason and Angela are suitable to have custody of these children." The court granted the parties joint legal custody and noted that joint physical custody would also be appropriate "except that the parties have had such a contentious separation." Therefore, the court granted primary physical custody to Jason.

[¶22.]     Based on the evidence, we cannot say that the trial court's findings of facts were clearly erroneous nor that its custody determination was an abuse of discretion. The trial court weighed the relative custodial advantages of each parent. The evidence showed that even though Angela was at home most of the time, the children often joined their father for farm work and while he was trucking. Both children also enjoyed spending time with their paternal grandparents. The children have a close relationship with both their father and their paternal grandparents. The couple's son, who suffered learning disabilities, performed better in the Selby school district with father than in the Mobridge school district with mother. Jason showed no favoritism between the two children; Angela often favored her daughter over her son. Angela unadvisedly introduced the children to her male companion; Jason chose not to date. Finally, Angela stated that she did not want to share custody with Jason and that he should not have any input concerning the children. Jason, however, thought joint custody would benefit the children because they need both parents.

[¶23.]     The facts support the trial court's conclusion that it is in the children's best interests to award physical custody to Jason. The trial court carefully and methodically considered all the evidence, and its findings are not clearly erroneous. The trial court did not abuse its discretion.

*Admissibility of Custody Evaluation*

[¶24.]      Finally, we consider Angela's argument that the trial court erred when it failed to admit the custody evaluation. Angela argues that her financial condition prohibited paying the evaluator to testify at the divorce trial. She asserts that in the context of family law, an exception should be made for custody evaluations in order to help the trial court make the best decision for the child.

[¶25.]     We normally review evidentiary rulings under the abuse of discretion standard. Steffen v. Schwan's Sales Enters., Inc., 2006 SD 41, ¶19, 713 NW2d 614, 621. In this case, however, there is no evidentiary ruling to review. While Angela filed a pretrial motion for admission of the custody evaluation, the record contains no ruling on that motion. Further, the record contains no transcript concerning that motion. The record merely contains a notice of a change of the trial date. The transcript of the court trial indicates that Angela never offered the evaluation and the trial court never considered its admissibility.

[¶26.]     Consequently, the record contains no grant or denial of Angela's motion. Further, Angela failed to present the custody evaluation at trial in order to preserve the issue for appeal. *See* Joseph v. Kerkvliet, 2002 SD 39, ¶7, 642 NW2d 533, 535. As we have stated,

> the proponent of the evidence must attempt to present the
> excluded evidence at trial, and if an objection to the proffered

> evidence is sustained, the proponent must then make an offer of proof. Such a requirement is strictly applied because a trial judge should be given an opportunity to reconsider [the] prior ruling against the backdrop of the evidence adduced at trial.

*Id.* (citation omitted). Thus, where a party does not attempt to introduce evidence at trial or make an offer of proof, the issue has not been preserved for appeal. *Id.* Consequently, we decline to consider Angela's arguments concerning the custody evaluation.

[¶27.]    Affirmed.

[¶28.]    GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶29.]    ZINTER, Justice, concurs specially.


ZINTER, Justice (concurring specially).

[¶30.]    I concur and write to express concern that we appear to be slowly progressing towards failing to enforce that part of SDCL 25-4-17.2 that prohibits a divorce on the ground of irreconcilable differences "without consent of both parties." Therefore, I disagree with the Court's broad statement that "[b]y pleading in the alternative, [extreme cruelty and irreconcilable differences, Angela] impliedly consented to irreconcilable differences, thus meeting the requirements of the statute." *See supra* ¶17. I would not, in future cases, apply such a rule when there is also evidence of conduct reflecting a withdrawal of implied consent. However, in this case, the evidence of consent is strong. Angela had knowledge of the implied consent case law, and she had an opportunity to comply with it or object to its application. But, she did neither.

[¶31.]     The record reflects that following the trial, the court orally notified the parties that it would not grant a divorce on the basis of extreme cruelty, but it would consider irreconcilable differences.  In response, Angela did not withdraw her request for a divorce on that ground.  She merely indicated that she would not "*like* a divorce on those grounds."[3]  (Emphasis added.)  The trial court advised the parties to brief the question of how the court should proceed in light of the fact that "we don't have a divorce."  The parties briefed the issue.  Jason relied on the implied consent language of *Dussart v. Dussart*, 1996 SD 41, 546 NW2d 109, but Angela did not address the implied consent issue.  Ultimately, the trial court issued a memorandum decision indicating it would grant a divorce on irreconcilable differences based upon the implied consent reasoning of *Dussart*.

[¶32.]     Thereafter, Angela failed to do anything to withdraw her consent or even object to the trial court's proposed disposition based upon implied consent despite language in *Dussart* recognizing that post-trial conduct may be sufficient.  Instead, Angela filed a motion to reconsider simply rearguing her position that she was entitled to a divorce on the ground of extreme cruelty.  The trial court granted Angela's request for reconsideration.  And again, at this hearing, Angela failed to do anything to withdraw her consent or object to the trial court's proposed disposition

---

3.     Earlier, she indicated she was unwilling to "stipulate to irreconcilable differences."  In my view, had Angela maintained this position in the post-trial proceedings, she would not have impliedly consented to a divorce on the grounds of irreconcilable differences.  However, as is explained hereafter, Angela's post-trial conduct precludes her from relying on the consent requirement on appeal.

based upon *Dussart*. Rather, Angela simply argued facts supporting extreme cruelty without addressing implied consent.

[¶33.]     Finally, at the court's direction, Jason proposed findings of fact and conclusions of law. In Finding of Fact #6, which was ultimately adopted by the court, Jason proposed that as a result of Angela's failure to amend her complaint, she impliedly consented to the ground of irreconcilable differences. In responding to this proposed finding, Angela, for the third time, did not object to the finding of implied consent. Rather, Angela objected to the finding on the sole ground that she was entitled to a divorce on the basis of extreme cruelty.[4]

[¶34.]     Thus, it is quite clear that Angela was aware of the need to do something to withdraw her request for a divorce on the ground of irreconcilable differences, she had the opportunity to do so, but failed to do anything. Moreover, although she had the opportunity, she failed to even object to the court's proposed determination that she had impliedly consented. For these reasons, I concur.

---

4.     Angela objected to this finding by merely reincorporating her previously filed motion and brief to reconsider, which only argued a factual entitlement to a divorce on the ground of extreme cruelty.