#27601-a-LSW
**2016 S.D. 64**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the MAURICE M. RICARD FAMILY TRUST

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

JEFFREY R. CONNOLLY of
Gunderson, Palmer,
  Nelson & Ashmore, LLP
Rapid City, South Dakota

         and

JASON L. REED of
Adam Jones Law Firm, PA
Wichita, Kansas                          Attorneys for appellants Renee
                                         Laas, Racette Cuzzort,
                                         Individually & as Trustee of the
                                         Mary Bettwy Trust & Anna
                                         Marsden.


MICHAEL W. STRAIN of
Strain Morman Law Firm
Sturgis, South Dakota                    Attorneys for appellee
                                         Kelly Ricard.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016
OPINION FILED **09/28/16**

#27601

WILBUR, Justice

[¶1.]     Many years after the sisters sold their respective interests in the family trust to one brother, the sisters sought to rescind their agreements and repurchase their respective interests. The sisters alleged that their brother obtained their consent to sell through fraud and undue influence. After a two-day court trial, the circuit court denied the sisters' request. The sisters appeal. We affirm.

## Background

[¶2.]     Maurice Ricard and his wife, Ella "Bernadette" Ricard, had six children: Kelly Ricard, Renee Anderson (now Renee Laas), Anna Henrickson (now Anna Marsden), Racette Cuzzort, Medric Ricard, and Mary Bettwy. Maurice and Bernadette each owned an undivided, one-half interest in the real property comprising the Ricard family ranch. They wanted the ranch to stay intact, remain in the family, and operate as a ranch. Since 1998, their son Kelly leased the real estate to graze cattle.

[¶3.]     Maurice passed away on August 11, 2002. Bernadette, as personal representative, admitted Maurice's Last Will and Testament to probate. The Will created The Maurice M. Ricard Family Trust (Family Trust or Trust). The Family Trust appointed Renee as trustee. The Family Trust provided that the real property owned by Maurice would be held by the Trust for the use and benefit of Bernadette during her lifetime. Bernadette, as personal representative, conveyed Maurice's undivided, one-half interest in the real property to the Family Trust. The Trust further provided that, upon the death of Bernadette, the Trust would

terminate and Kelly would receive 50% of the assets, Renee, Anna, and Racette would each receive 12.5%, and the remaining 12.5% would be placed in a trust for the benefit of Mary.

[¶4.] In 2003, Bernadette formed the Ricard Ranch Family Limited Partnership for estate planning purposes on the advice of attorney Kurt Solay. Attorney Solay had been giving Maurice and Bernadette estate planning advice since 1998, and continued to give Bernadette advice after Maurice's death. In regard to the Limited Partnership, Bernadette and Kelly were the general partners. Later, Bernadette assigned her general partnership interest to Kelly. The Family Trust was a limited partner. On November 20, 2003, Renee, as trustee of the Family Trust, conveyed the undivided, one-half interest in the real property owned by the Family Trust to the Limited Partnership. Bernadette similarly transferred her undivided, one-half ownership in the real property to the Limited Partnership.

[¶5.] In November 2003, Kelly offered to purchase the sisters' respective 12.5% interests in the Family Trust for $20,000 each. The offer included an option to purchase, providing that each sister could purchase back their interest under certain circumstances. The sisters accepted Kelly's offer, signed the agreements to sell (Agreements), and negotiated the $20,000 checks mailed to them by Attorney Solay. After the purchase, the sisters no longer held an interest in the Family Trust. According to Renee, the sisters believed they would inherit from Bernadette's estate when Bernadette passed.

[¶6.] In October 2008, the Limited Partnership transferred approximately 80 acres of real estate to Bernadette for estate planning purposes. According to

Kelly, the 80 acres comprised Bernadette's personal residence. The Family Trust owned an undivided, one-half interest in the 80 acres.

[¶7.] In August 2010, Bernadette passed away. Upon its terms, the Family Trust terminated. Renee, as trustee, took no action to distribute the Trust assets following Bernadette's death. Under the Trust, the assets would have been distributed to Kelly because he owned a 50% interest and purchased each sister's 12.5% interest. Kelly filed a petition for distribution in January 2013. The sisters objected and filed a petition for determination of beneficiary status. The sisters challenged the enforcement of the Agreements signed by them selling their respective 12.5% interests in the Family Trust to Kelly. They sought to rescind the Agreements due to fraud and undue influence by Kelly. Renee claimed that although she negotiated the $20,000 check, she sent the funds back to Kelly and Bernadette. According to Renee, she believed she had no other option but to sign the Agreement. She believed the payment was part of Maurice's estate. She testified that she was not aware that she was transferring her interest for far less than it was worth.

[¶8.] After a two-day trial, the court denied the sisters' petition. The court concluded that there was no evidence that any sister was forced to sign the Agreement or that Kelly affirmatively or by omission misrepresented any fact or committed any fraud.

[¶9.] The sisters appeal, asserting:

1. Whether the Agreements are enforceable.

2. Whether, assuming that the Agreements are valid and enforceable, the appellants should be allowed to rescind their Agreements.

3. Whether, assuming that Agreements are valid and enforceable, Kelly Ricard breached the Agreements.

## Standard of Review

[¶10.] We review the circuit court's factual findings for clear error. *Geraets v. Halter*, 1999 S.D. 11, ¶ 12, 588 N.W.2d 231, 233. Whether undue influence exists and whether fraud was perpetrated are questions of fact. *In re Donald Hyde Tr.*, 2014 S.D. 99, ¶ 37, 858 N.W.2d 333, 344; *Poeppel v. Lester*, 2013 S.D. 17, ¶ 20, 827 N.W.2d 580, 585. We give no deference to the court's conclusions of law. *Geraets*, 1999 S.D. 11, ¶ 12, 588 N.W.2d at 234.

## Analysis

### 1. Are the Agreements Enforceable?

[¶11.] The sisters contend that the Agreements, "while on their surface appear to be valid and enforceable, are actually the product of undue influence, fraud and the result of a person with more power and access to information taking advantage of his confidential situation." In the sisters' view, the evidence presented clearly established that there was no meeting of the minds on all essential elements or terms of the Agreements, and the circuit court failed to consider this evidence. The sisters particularly emphasize that Kelly stood in a confidential relationship with them because he had superior knowledge of land values, knowledge of the cattle operation, and was a general partner of the limited partnership.

[¶12.] In response, Kelly claims that the sisters consented to the terms of the Agreements "by participating in at least one meeting to discuss the content and

reason for the agreement, by signing the agreement, by accepting and cashing a check for $20,000.00." He also argues that consideration was sufficient because, in addition to the $20,000 payment, the sisters were able to fulfill their parents' desire that the Ricard family ranch remain in the family, that it operate as a ranch, and that the sisters would have the option to repurchase if Kelly were to attempt to sell the real property for non-agricultural purposes. In regard to their claim that Kelly exerted undue influence or perpetrated fraud, Kelly claims that he "had no affirmative obligation to the Sisters to provide them valuation information, and the record is absolutely clear of any actions or omissions by Kelly constituting fraud or undue influence."

[¶13.] Under SDCL 53-1-2, the "[e]lements essential to existence of a contract are: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." It is a general rule that "one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation or other wrongful act by another contracting party." *Lucero v. Van Wie*, 1999 S.D. 109, ¶ 16, 598 N.W.2d 893, 898 (quoting *LPN Tr. v. Farrar Outdoor Advert., Inc.*, 1996 S.D. 97, ¶ 13, 552 N.W.2d 796, 799).

[¶14.] Here, the court found that no sister presented "evidence that any sister was forced to sign the agreement." In the court's view, the sisters "misapprehended an expectancy from mother's estate," but "[t]his misapprehension fails to negate the sisters' consent to the agreement." Also, according to the court, the sisters presented "no evidence that Kelly affirmatively or by omission misrepresented any

fact or committed a fraud." The court recognized that the sisters contested the validity of the Agreements only after Bernadette's death because they learned that they did not inherit their mother's portion of the Ricard family ranch.

[¶15.] We afford great deference to the circuit court's ability to judge the credibility of the witnesses and the weight to be given to their testimony. *See Jeschke v. Wockenfuss*, 534 N.W.2d 602, 604 (S.D. 1995). Our review of the evidence supports the court's determination that Kelly did not obtain the sisters' consent through fraud or undue influence. The sisters received an inventory of Maurice's estate dated December 19, 2003, which indicated the value of Maurice's undivided, one-half interest in the ranch property at $952,500. Renee testified that she was aware of how land is valued in agriculture because she is in the agriculture business. Then, on December 31, 2003, the sisters signed the Agreements selling their respective interests to Kelly. Each sister also accepted and negotiated the $20,000 payment for the sale. "A party's intentional conduct which constitutes a manifestation of assent will bind a party even though the party's conduct does not truly express his or her state of mind." *Amdahl v. Lowe*, 471 N.W.2d 770, 774 (S.D. 1991). And it "would absolutely destroy the value of all contracts" if we allow the sisters to deny the agreement each made because they did not read them. *LPN*, 1996 S.D. 97, ¶ 13, 552 N.W.2d at 799 (citation omitted).

[¶16.] There is no evidence to support the sisters' claim that Kelly, a general partner of the Limited Partnership, was in a confidential relationship with the sisters as beneficiaries of the Family Trust or that Kelly unduly influenced the Family Trust and its beneficiaries when he applied a discount to the calculation of

the minority interests. The sisters were not limited partners of the Limited Partnership. And Kelly did not purchase Limited Partnership interests. Kelly purchased the sisters' respective remainder interests in the Family Trust.

### 2. Should the Contracts be Rescinded?

[¶17.] The sisters argue that they did not freely and voluntarily give their consent to sign the Agreements. They aver that they signed the Agreements because they believed they had no other option. According to Renee, they signed the Agreements to protect their mother. Renee, as trustee of the Family Trust, further asserts that "[s]he was not provided independent advice that the Family Trust owned an interest in the real estate that was separate and apart from the interest of her mother." The sisters claim the Agreements should be rescinded because Kelly "gained an advantage to the detriment of the Sisters and the Family Trust by not providing the documentation and carrying forth his fiduciary duties to inform the limited partners of what limitations would be placed on their ownership interest."

[¶18.] Kelly, in response, asserts that the sisters are barred from rescinding the Agreements because the statute of limitations expired on their claim. He alternatively argues that the sisters have failed to cite to specific testimony or evidence to support that he perpetrated fraud, duress, or undue influence. He emphasizes that the sisters seek rescission for a mistake that arose due to the sisters' failure to be prudent. Kelly contends that "[t]he Sisters simply regret their decision or wish for a do-over because they assumed each would receive more directly from Bernadette through her Last Will and Testament."

[¶19.]     Statute of limitations is an affirmative defense, which must be pleaded or it is waived.  SDCL 15-6-8(c); *High Plains Genetics Research, Inc. v. J K Mill-Iron Ranch*, 535 N.W.2d 839, 845 (S.D. 1995) (failure to plead an affirmative defense "results in a bar to the defense").  From our review of the record, Kelly did not raise statute of limitations as an affirmative defense.  This waives the issue.

[¶20.]     Nonetheless, the circuit court did not err when it refused to rescind the Agreements.  "One cannot, without an option to do so or consent of the other party, be relieved of a contract merely because he may have made a bad bargain." *Olson v. Opp*, 85 S.D. 325, 328-29, 182 N.W.2d 220, 222 (1970).  And the reason for rescission "must not have arisen from want of such care as would be exercised by a person of reasonable prudence where the means of knowledge were readily accessible." *Id.* at 329, 182 N.W.2d at 222.

[¶21.]     The evidence establishes that the sisters received an inventory after their father's death indicating the value of his interest in the real property.  The sisters knew that Bernadette wanted the real property to remain in the Ricard family and operate as a ranch.  The sisters acknowledged that Kelly ranched the Ricard property and intended to continue to do so.  The sisters voluntarily accepted the $20,000 payment under the terms of the Agreement.

### 3. Did Kelly Breach the Agreements?

[¶22.]     The sisters argue that Kelly materially breached the Agreements when Kelly, as the general partner of the Limited Partnership, transferred real estate out of the Limited Partnership without notice to the limited partner—the Family Trust.  According to the sisters, the language of the Agreements contemplates "that all of

the real estate that was the subject of the Agreement would remain intact at least until the death of Bernadette Ricard." Because Kelly transferred real estate out of the Limited Partnership, the sisters claim they did not receive the benefit of their bargain and should "now have the opportunity to repurchase their 12.5% interest back from Kelly Ricard for the original price of $20,000 each." The sisters acknowledge they did not plead a claim for breach of contract. They assert that the issue was tried by implied consent, and Kelly had a full and fair opportunity to litigate the issue. *See* SDCL 15-6-15(b).

[¶23.]     Kelly responds that he did not consent to amend the pleadings to add a claim for breach of contract. He also asserts that he did not consent to allow a breach of contract claim simply because he allowed testimony concerning the 2008 transfer of real property from the Limited Partnership. Alternatively, Kelly argues that he did not breach the Agreements because nothing in the Agreements prohibited the Limited Partnership from transferring property directly to Bernadette during Bernadette's lifetime, and the transfer did not implicate the sisters' option to purchase because the property continued to be used for agricultural purposes.

[¶24.]     In *Dussart v. Dussart*, we explained that a motion to amend the pleadings must be made to the circuit court before this Court will consider whether the issue was tried by implied consent under SDCL 15-6-15(b). 1996 S.D. 41, ¶ 6, 546 N.W.2d 109, 111. This is because the "complaining party must give the trial court an opportunity to consider claimed irregularities and rule on them." *Id.* The sisters contend that "the request was made in the post trial brief that was presented

by Appellants requesting that the breach of contract be determined." But we cannot find the request in the record. Regardless, there is no written motion in the record or oral motion in the transcripts to support that the sisters moved the circuit court to amend their pleadings. We decline to consider the sisters' argument that SDCL 15-6-15(b) permits their claim that Kelly breached the Agreements.

[¶25.]   Affirmed.

[¶26.]   GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.