1998 SD 94

**In the Matter of the ESTATE OF Elizabeth Anne UNKE, Deceased.**

**Nos. 20232, 20245.**

Supreme Court of South Dakota.

Considered on Briefs June 3, 1998.

Decided Aug. 12, 1998.

Dean A. Hammer, Dell Rapids, and John M. Cogswell, Buena Vista, Colorado, for appellant Anne M. Ireland.

Roger R. Gerlach, Salem, for appellee Michael Unke.

MILLER, Chief Justice.

[¶ 1.] Anne Ireland and Michael Unke are siblings. Anne appeals from the trial court's decision admitting their mother's will to probate. Michael appeals from the trial court's decision removing him as personal representative of their mother's estate, as well as trustee over Anne's share of the estate property. We affirm.

### FACTS

[¶ 2.] Walter and Elizabeth Unke had two children, Anne and Michael. Michael has no children, while Anne has two daughters. The family was financially successful, owned two companies, and had several investments. Walter died on September 13, 1990. After his death, Michael, who is an attorney, took over much of the administration of the companies and the family's investments. Anne had little to do with the day-to-day operations of the family businesses.

[¶ 3.] Elizabeth died on December 15, 1995. Her will, executed on November 15, 1993, provided that Michael would receive half of her property outright, and that he would also be the personal representative of her estate, as well as trustee of a trust over Anne's half of the property. Anne objected to the probate of the will, claiming it was the product of undue influence, because Michael had a confidential relationship with his mother and he had helped draft it.

[¶ 4.] To rebut the presumption that the will was the product of undue influence, Michael, attempting to explain why Elizabeth set up the trust, presented evidence that Anne had a drinking problem and was a spendthrift. It was also shown that Elizabeth and Anne had purchased a house together in the spring of 1992, and that there was much tension between Elizabeth, Anne, and Anne's two daughters while they lived in the same house. During this time, Elizabeth

apparently became worried about Anne's behavior and her spending habits. There was testimony that, in the fall of 1992, Elizabeth was shown an accounting indicating that in a nine-month period Anne had gone through about $1 million in her account. Elizabeth apparently was also aware that Anne had dreams in which her dead father would talk to her and tell her that Michael was "robbing her blind" and to get a lawyer to look into it. Elizabeth was concerned that, with Anne's habits, there would be nothing left for Anne's two daughters.

[¶ 5.] In early November, 1993, Elizabeth approached Michael expressing concerns over Anne's behavior. He suggested she contact an attorney and recommended some names to her. Elizabeth decided to meet with Gale Fisher, a Sioux Falls attorney who had previously represented the family. She and Michael first met with Fisher on November 11, 1993. Elizabeth expressed her concerns over Anne's behavior to Fisher and stated she was interested in setting up some sort of conservatorship or guardianship because of that behavior.[1] Fisher did not believe establishing a conservatorship was proper, but thought it best to place the property in trust. Elizabeth's will was then discussed, however, since at that time Fisher was too busy, it was agreed that Michael would draft the will. Elizabeth and Fisher next met on November 13 to review the will which Michael had prepared. Michael was present for at least part of that meeting, but remained silent throughout. Corrections were suggested for the will and Michael returned to his office to make them. On November 15, 1993, Elizabeth brought the will to Fisher once again. Again, some changes were needed and Michael made them. The final draft of the will was then duly executed by Elizabeth that same day. Later that day, Elizabeth accompanied Michael to his office where she signed a deed making him her joint tenant on some lake property she owned.

[¶ 6.] The will provided that Elizabeth's property was to be divided evenly between Michael and Anne. However, Michael was to receive his share outright, and Anne's was to be placed in trust with Anne's daughters as residuary beneficiaries. Michael was designated the personal representative of the estate and trustee over the trust.

[¶ 7.] On July 28, 1997, after the trial on this matter, the court issued its findings of fact and conclusions of law, concluding there was a presumption of undue influence, but that it had been rebutted by Michael. Further, the court held Anne had failed to establish the will was invalid based on undue influence. The trial court also replaced Michael with the First National Bank of Sioux Falls as trustee and personal representative.

[¶ 8.] Anne appeals, raising the following issues:

1. Whether the trial court erred in finding there was no undue influence.

2. Whether the trial court's findings of fact and conclusions of law on certain matters were incorrect.

3. Whether the trial court erred in failing to make any findings that the will was the product of fraud.

[¶ 9.] By notice of review, Michael raises the following issue:

1. Whether the trial court erred in finding it was not in the best interests of the estate or trust to have Michael as personal representative or trustee.

### DECISION

[¶ 10.] **1. Whether the trial court erred in finding there was no undue influence.**

a. *Standard of review and analysis of an undue influence issue.*

[¶ 11.] The issue of whether undue influence exists is a question of fact for the trial

---

1. Specifically, Fisher testified that Elizabeth was concerned over Anne's alcohol abuse. She was also concerned about the "hallucinations" Anne was having, including talking to her dead father and being picked up by a UFO. She thought Anne might be suicidal and that she hates her family. Apparently Elizabeth was also concerned about Anne because she claimed to have a new "substitute" mother named Irma, who Anne knew in a prior life as the madam of a whorehouse. According to Elizabeth, Anne believed she was one of Irma's prostitutes in that prior life.

court to determine. *In re Estate of Madsen*, 535 N.W.2d 888, 891 (S.D.1995). We will not set aside a trial court's findings of fact unless they are clearly erroneous. *In re Estate of Elliott*, 537 N.W.2d 660, 662 (S.D.1995) (citing SDCL 15–6–52(a); *In re Estate of Till*, 458 N.W.2d 521, 523 (S.D.1990); *In re Estate of Weickum*, 317 N.W.2d 142, 145 (S.D.1982); *In re Estate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 458 (1970)). A trial court's finding is clearly erroneous if, "after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made[.]" *Id.* (citations omitted). All conflicts in the evidence must be resolved in favor of the trial court's determinations. *Till*, 458 N.W.2d at 523. "The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the trial court and we give due regard to the trial court's opportunity to observe the witnesses and the evidence." *Elliott*, 537 N.W.2d at 662. We review any documentary or deposition evidence under a de novo standard of review. *Id.*

[¶ 12.] Under our settled law, to establish the existence of undue influence a will contestant must prove four elements by a preponderance of the evidence: "(1) decedent's susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and (4) a result clearly showing the effects of undue influence." *Elliott*, 537 N.W.2d at 662–63 (citations and internal quotations omitted).

[¶ 13.] However, a presumption of undue influence arises "when there is a confidential relationship between the testator and a beneficiary who actively participates in preparation and execution of the will and unduly profits therefrom." *Madsen*, 535 N.W.2d at 892 (citations and internal quotations omitted). When such a presumption arises, the burden of going forward with the evidence shifts to the beneficiary to show he took no unfair advantage of the decedent. *In re Estate of Metz*, 78 S.D. 212, 222, 100 N.W.2d 393, 398 (1960). The ultimate burden remains on the person contesting the will to prove the elements of undue influence by a preponderance of the evidence. *Madsen*, 535 N.W.2d at 893.

[¶ 14.] Because Anne attacks and criticizes the test for undue influence used by the trial court, and because the test has not always been clearly stated by us, we take this opportunity to clarify the test by stating it correctly: *the burden of going forward with the evidence in an undue influence case does not shift to the beneficiary unless a presumption of undue influence is established.*

b. *Undue influence issue analyzed in this case.*

[¶ 15.] Anne argues the trial court erred in determining that Michael rebutted the presumption of undue influence which had arisen, and also that Anne had failed to establish the existence of undue influence. We disagree.

[¶ 16.] In determining that a presumption of undue influence had arisen, the trial court first found that a confidential relationship existed between Michael and Elizabeth. "A confidential relationship exists whenever a decedent has placed trust and confidence in the integrity and fidelity of another." *Madsen*, 535 N.W.2d at 892 (citations and internal quotations omitted). In ascertaining if a confidential relationship exists, we consider such factors as the amount of time the beneficiary spent with the testator, whether the beneficiary handled many of the personal or business affairs of the testator, and whether the testator ever sought the advice of the beneficiary. *Till*, 458 N.W.2d at 524. Michael managed the daily operations of the family business, handled Elizabeth's financial affairs when she was traveling, and gave her advice on family matters, including her concerns over Anne's behavior. Clearly a confidential relationship existed between Michael and his mother.

[¶ 17.] The trial court also examined the other two factors needed to raise a presumption of undue influence, that is, whether Michael participated in the preparation and execution of Elizabeth's will, and whether he unduly profited therefrom. The trial court found Michael was involved in drafting the

will: He had more estate planning experience than Fisher; he wrote the boiler-plate provisions of the will; he had his secretary type it; and he helped write some of the non-boilerplate language. The trial court also found that while Michael did not unduly profit from the will at present, he did have the immediate and foreseeable opportunity to unduly profit. This was evidenced by the fact that he received his half of the property outright, and he was also named as trustee over his sister's half of the property and personal representative of the estate. Given the nature of the property, and the control that Michael was given over it, the potential for him to unduly profit is great, and we cannot say the trial court was clearly erroneous in finding that a presumption of undue influence was established. Indeed, Michael does not even argue in his brief that there was no presumption.

[¶ 18.] Once the presumption was raised, the burden was on Michael to go forward with evidence to show that he took no unfair advantage of Elizabeth. *Metz*, 78 S.D. at 222, 100 N.W.2d at 398. The trial court found Michael met his burden of rebutting the presumption. We agree.

[¶ 19.] When Elizabeth was concerned about Anne, she went to Michael to discuss what should be done. He suggested she consult an attorney other than himself, and she made the decision to choose Fisher. He did take her to see Fisher, and although Michael was integral in drafting the will, Fisher testified that Michael was very silent during the times Fisher and Elizabeth met to discuss the will. Fisher also testified that from his perspective, the will provided for exactly what Elizabeth wanted, and she was not acting under the influence of anyone or anything. There was also testimony from other witnesses that Elizabeth had expressed concerns about Anne's behavior. Anne's argument consists mainly of claiming that any evidence Michael presented was not credible, and disproved by Anne's own witnesses. As mentioned above, we must give credit to the trial court's unique ability to judge the credibility of the witnesses and the evidence. *Elliott*, 537 N.W.2d at 662.

[¶ 20.] Once Michael rebutted the presumption of undue influence, Anne had the burden of proving undue influence. *See Madsen*, 535 N.W.2d at 893. The trial court ruled she failed to meet two of the elements: (1) susceptibility to undue influence, and (2) a result clearly showing signs of undue influence. In reviewing the evidence, we cannot say the trial court was clearly erroneous.

[¶ 21.] Anne first argues Elizabeth was susceptible to undue influence because she was physically and mentally weak. "The physical and mental strength of a testator is material regarding the question of the testator's susceptibility to undue influence and fraud." *Elliott*, 537 N.W.2d at 665 (citations omitted). Anne argues Elizabeth was physically weak because in 1991 she stated that she had a "chronic loss of energy." Further, Anne claims Elizabeth was physically weak, because she was diagnosed with cancer two months after signing her will. Anne also points to indications of mental weakness on Elizabeth's part. She argues Elizabeth was prone to rely on Michael, and did so when she bought a car, when she changed the timing of a trip, and when she chose Fisher as the attorney to draft her will.

[¶ 22.] Despite Anne's assertions, there was extensive testimony to show Elizabeth was neither physically nor mentally weak. Dr. Yount, Elizabeth's primary physician in Florida since 1980, testified that Elizabeth was competent and completely capable of making her own decisions until the time of her death. William Miller, a member of the board of directors for Elizabeth's Florida condominium, stated that in his opinion Elizabeth had her own mind and was not susceptible to influence by anyone. Several of Elizabeth's close friends testified that she was not susceptible to influence, was completely competent, and demonstrated business savvy until the time of her death. Fisher testified he did not believe Elizabeth was acting under Michael's influence when she executed her will and that she knew exactly what was going on. William Lindquist, who has been the family investment banker since 1982, testified that Michael, at some point in time, had tried to convince his mother to invest more in the stock market, but Elizabeth was "her

own person" and Michael's suggestion was rejected by her. The evidence is sufficient to support the trial court's finding that Elizabeth was not subject to undue influence.

[¶ 23.] The trial court also found Anne had failed to satisfy the fourth prong of the undue influence test, that is, that the will indicated a result clearly showing the effects of undue influence. Although Anne does not argue this element extensively in her brief, she does argue that, because Michael was given control as trustee and personal representative over Anne's property, it demonstrates the result of undue influence. The trial court held that the will reflected Elizabeth's life-long goals for her family. Given Elizabeth's concerns over Anne's habits,[2] and the fact that Michael had been in charge of the family business since his father's death, we cannot say the trial court erred in finding the will did not show the effects of undue influence.

[¶ 24.] Because we hold the trial court did not err in finding Anne had failed in her burden of establishing two of the elements necessary for a finding of undue influence, we need not address the remaining elements.[3]

[¶ 25.] **2. Whether the trial court erred in finding it was not in the best interests of the estate or trust to have Michael as personal representative or trustee.**

[¶ 26.] Michael appeals the trial court's finding that it was in the best interest of the estate to remove him as personal representative and trustee. The trial court reasoned that, given the hatred between Anne and Michael, having Michael serve as personal representative and trustee would merely result in "continued and protracted litigation."[4]

[¶ 27.] SDCL 29A–3–611 provides, in relevant part:

(a) Any interested person may petition for removal of a personal representative for cause at any time....

(b) Cause for removal exists when:

(1) Removal is in the best interests of the estate[.]

[¶ 28.] Michael argues that the potential for litigation and the animosity between he and Anne are not sufficient grounds for his removal as personal representative. We do not agree.

[¶ 29.] The decision by a trial court to remove a personal representative is usually reviewed under an abuse of discretion standard. 31 Am.Jur.2d *Executors and Administrators* § 277 (1989); *see also In re Haagenson*, 952 P.2d 1385, 1387 (Mont.1997). Michael cites to cases that hold a personal representative cannot be removed merely because there is animosity between the parties. However, there are cases that hold to the contrary. *See In re Estate of Jaworski*, 479 N.E.2d 89, 91–92 (Ind.Ct.App.1985) (removing an executor/brother who was "unsuitable" because the "animosity and ill-feeling" between him and his siblings was so great as to affect the orderly administration of the estate); *see also Spies v. Milner*, 928 S.W.2d 317, 319 (Tex.Ct.App.1996) (holding a personal representative was "unsuitable" based in part on the animosity between her and the beneficiaries). The trial court was concerned with the best interests of the estate. It certainly was not an abuse of discretion to hold that the hatred between Michael and Anne would affect how the estate was handled and would potentially give rise to much future litigation, especially given the control

2. Anne argues that Elizabeth's concerns about her were the product of what Michael told her and that there was no factual basis for them. This was clearly a fact question for the trial court and it was not clearly erroneous. (It should be noted that Elizabeth lived with Anne for some time and was able to see Anne's behavior first-hand.)

3. We also find Anne's remaining two issues are either lacking in merit or were not properly presented to the trial court and we, therefore, decline to discuss them.

4. Michael's argument that he should not have been removed as trustee is presented as being the same as his argument that he should not have been removed as personal representative and, therefore, our discussion will only concern the latter.

Michael would have over all the family's property.[5]

[¶ 30.] Affirmed.

[¶ 31.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

**5.** Each case is fact specific and we do not mean to imply that animosity between heirs, in and of itself, is grounds for removal.