#23833-a-MILLER, Retired Justice

**2006 SD 79**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE ESTATE OF
KENNETH THOMAS DUEBENDORFER

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LEE D. ANDERSON
Judge

* * * *

KRISTINE L. KREITER O'CONNELL
SANDER J. MOREHEAD of
Woods, Fuller, Shultz and Smith
Sioux Falls, South Dakota           Attorneys for appellants
                                       Mollers.

JEFF COLE of
Zimmer, Duncan & Cole
Parker, South Dakota           Attorneys for contestants
                                       and appellees, M. Hinds, V.
                                       Sikkink, L. Zenk, M. Bienash,
                                       R. Jeffords, & E. Barks.

* * * *

CONSIDERED ON BRIEFS
ON MAY 25, 2006

OPINION FILED **8/16/06**

#23833

MILLER, Retired Justice

[¶1.]     Kenneth Duebendorfer executed a will that made Randy and Kathy

Moller (Mollers) the chief beneficiaries.  Upon Duebendorfer's death, several

individuals filed a petition contesting probate of the will.  A jury found the will to be

the product of undue influence and it was denied probate.  Mollers appeal.  We

affirm.

**Facts and Procedural History**

[¶2.]     Duebendorfer died on April 27, 2003, at the age of ninety.  He was a

bachelor who lived modestly, but had substantial wealth.  He had one sister, Irene

Rohrabaugh, who died on February 23, 2001.  Kathy Moller is the great niece by

marriage of Rohrabaugh.  She and her husband Randy are the appellants in this

case.  The contestants are Marcella Hinds (she and her deceased husband, Don,

were close friends of Duebendorfer), the Hinds' two daughters, Victoria Sikkink and

Linda Zenk, Maxine Bienash and Elizabeth Barks, both cousins of Duebendorfer,

and Russell Jeffords, Duebendorfer's friend.

[¶3.]     In 1998 Duebendorfer executed a power of attorney naming Hinds as

his attorney-in-fact.  She was taking care of Duebendorfer on a daily basis,

providing hygiene, meals and transportation.  She also assisted Duebendorfer in his

financial affairs by paying his bills.  It is undisputed that Hinds never asked for

money, nor was she ever paid by Duebendorfer for assisting him.

[¶4.]     From the time Hinds was named Duebendorfer's attorney-in-fact until

Rohrabaugh's death, Mollers had mere "sporadic" contact with Duebendorfer, seeing

him only about once a month.  After Rohrabaugh's death, Duebendorfer was

requested by Attorney Mike McGill, (who was representing Kathy on behalf of Rohrabaugh's estate), to disclaim his interest in joint bank accounts and property Duebendorfer held with Rohrabaugh. This request was apparently for South Dakota inheritance tax concerns. Duebendorfer disclaimed his interest in the property, but refused to disclaim his interest in the money. If he had done so, Kathy would have financially benefited as she was a beneficiary of Rohrabaugh's estate.

[¶5.] In March 2001, Hinds took Duebendorfer to the State Bank of Alcester to meet with bank official Lois Anderson to change several bank accounts and certificates of deposits (CD's) he had held jointly with Rohrabaugh.[1] Duebendorfer opened five different CD's with payable on death (POD) beneficiaries for a total of approximately $170,000. He also opened two other accounts for a total of approximately $178,000. Those two accounts were in Duebendorfer's name only with no POD beneficiaries.

[¶6.] Also in March, Duebendorfer met with Attorney Gary Ward to discuss making a will. Hinds was present at this meeting, but did not participate in the discussion. Duebendorfer executed that will on March 21, 2001. It provided cash bequests to Evelyn Brugger, Dennis West, Elizabeth Barks, Maxine Bienash, Judy Timm, Joyce Phyle, Marcella Hinds, Linda Floren, and Victoria Sikkink. The will further provided that the residue of the estate would be divided in seven equal

---

1. None of these accounts benefited Hinds or any member of her family.

shares to Ella Nason, Joyce Phyle, Russell Jeffords, Hinds, Linda Floren, Victoria Sikkink, and Kathy and Randy (they were to share 1/7 equally).

[¶7.] After Rohrabaugh's death, Mollers began to have more frequent contact with Duebendorfer. Beginning in March 2002, Randy was attempting to see him once a week. Mollers also began to help care for Duebendorfer, assisting with his hygiene, meals, and household needs. At the same time, Hinds noted that her relationship with Duebendorfer began to suddenly change; his actions towards her were angry and belligerent. Duebendorfer apparently was upset with Hinds over a gun her grandson had borrowed from him, as well as the care and frequency of visits he was receiving from her. Additionally, there was concern because it was being suggested to Duebendorfer by Randy and Duebendorfer's friend, Ray Lewis, that Hinds was mishandling or mismanaging his money.[2] These suggestions upset Duebendorfer.

[¶8.] Towards the end of March 2002, Duebendorfer reviewed his will with Ray Lewis. Lewis told Duebendorfer that he thought Hinds was trying to "take him" and this upset Duebendorfer. Duebendorfer further reviewed his will with Mollers. Kathy testified that she was "amazed" at what the will contained and she "questioned" the will's provisions, noting that her brother was not mentioned. Randy contacted Attorney McGill to arrange an appointment so that Duebendorfer could execute a new power of attorney and will.

---

2. Mollers concede that there is no evidence in the record that Hinds ever had or was stealing, taking, or mishandling any of Duebendorfer's money or property.

[¶9.]　　　On March 30, 2002, Duebendorfer signed a new power of attorney naming Mollers as his true and lawful attorneys-in-fact. He also discussed terms of a new will with McGill. McGill testified that he noted at the meeting that Duebendorfer was very angry with Hinds, but was not angry at nor had any ill feelings towards any of the other beneficiaries of his current will. After this meeting McGill communicated with Duebendorfer through Randy, receiving from Randy changes Duebendorfer allegedly wanted to make. Both Randy and Kathy admitted that they were aware of the impact of the changes Duebendorfer was making in his will, *i.e.*, that they were to be the chief beneficiaries under the new will.

[¶10.]　　　McGill testified that at the time of drafting the new will he was concerned with the possibility Mollers were exercising undue influence over Duebendorfer. In McGill's opinion, three of the four elements of undue influence were present. He testified that Mollers had both access and opportunity to exercise undue influence over Duebendorfer. Finally, McGill testified that had he known Randy was telling Duebendorfer that Hinds was stealing from him or mishandling his money, the information would be evidence of undue influence and a badge of fraud and, importantly, he would not have prepared the new will or permitted it to be executed.

[¶11.]　　　Duebendorfer executed the new will on April 10, 2002. It again made monetary bequests to Russell Jeffords, Evelyn Brugger, Hinds, and Roy Zinser, as well as a bequest to Ray Lewis. However, unlike the old will, under the new will these bequests would fail if the individual predeceased Duebendorfer. The will then

made Mollers the chief beneficiaries of Duebendorfer's estate by leaving the remainder, both real and personal property, to them rather than dividing it evenly as he had before. The new will made this provision even though several people, including Mollers, testified that Duebendorfer did not want his estate to go to one individual; rather, he wanted it divided evenly among several people. Also troublesome was that the bequest to Mollers would not fail if they predeceased Duebendorfer; rather, it would go to their heirs. The new will further contained a contestability clause that the old will had not.

[¶12.] After the execution of the April 2002 will, Mollers used the power of attorney for their personal benefit. Randy used it to attempt to terminate a lease Duebendorfer had with Roger Stevens on Duebendorfer's farm, which had existed for over thirty years (because Randy was interested in farming the land himself). When Stevens spoke to Duebendorfer about the lease, Duebendorfer apparently had no idea that Randy had termination papers prepared. After talking with Duebendorfer, they agreed the lease would remain in effect. Stevens agreed to increase the rent on 9.5 acres of land and keep the rent the same for the remainder of the term.

[¶13.] Moreover, on January 15, 2003, after obtaining a note allegedly signed by Duebendorfer, Randy changed the POD beneficiary on all of the accounts at the Alcester bank, listing himself and Kathy as the POD beneficiaries.[3] All of these changes resulted in approximately $266,000 in POD benefits to Mollers upon

---

3.  *See Bienash v. Moller*, 2006 SD 78, 721 NW2d 431 for further explanation of these transactions.

Duebendorfer's death on April 27, 2003. Randy also made POD beneficiary changes

on two accounts Duebendorfer had at the Wells Fargo Bank in Beresford. After the

changes made by Randy, these two accounts had Randy and Kathy as POD

beneficiaries and resulted in a payment of approximately $129,000 to Mollers.

Overall, upon Duebendorfer's death Mollers were paid a total of approximately

$395,000 as a result of all the POD beneficiary changes Randy made using the

power of attorney.

[¶14.]     After Duebendorfer's death, Hinds and several others filed a petition

contesting probate of Duebendorfer's April 10, 2002 will, claiming it had been

procured by undue influence on the part of Mollers. A jury trial was held July 25-

28, 2005. The jury found the will was the product of undue influence and it was

denied probate.

[¶15.]     Mollers appeal raising two issues:

> 1.     Whether the trial court erred in allowing "other acts" evidence
>        under SDCL 19-12-5 (Rule 404(b)).
>
> 2.     Whether the trial court erred in giving Jury Instruction 17.

**Standard of Review**

[¶16.]     "Evidentiary rulings made by the trial court are presumed correct and

are reviewed under an abuse of discretion standard." *Veeder v. Kennedy*, 1999 SD

23, ¶41, 589 NW2d 610, 619 (citing *State v. Oster*, 495 NW2d 305, 309 (SD 1993)).

*See also* State v. Mattson, 2005 SD 71, ¶13, 698 NW2d 538, 544 (citations omitted).

"The test is not whether we would have made the same ruling, but whether we

believe a judicial mind, in view of the law and the circumstances, could have

reasonably reached the same conclusion." *Veeder,* 1999 SD 23, ¶41, 589 NW2d at

619 (citing State v. Rufener, 392 NW2d 424, 426 (SD 1986)). "If error is found, it must be prejudicial in nature before this Court will overturn the trial court's evidentiary ruling." *Mattson*, 2005 SD 71, ¶13, 698 NW2d at 544 (citing Novak v. McEldoney, 2002 SD 162, ¶7, 655 NW2d 909, 912 (citations omitted)).

> [This Court] construe[s] jury instructions as a whole to learn if they provided a full and correct statement of the law. If, as a whole, the instructions misled, conflicted, or confused, then reversible error occurred. The party charging that an instruction was given in error has the dual burden of showing that the instruction was erroneous and prejudicial. An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it.

Kappenman v. Stroh, 2005 SD 96, ¶14, 704 NW2d 36, 40-41 (citing Behrens v. Wedmore, 2005 SD 79, ¶37, 698 NW2d 555, 570 (citing First Premier Bank v. Kolcraft Enterprises, Inc., 2004 SD 92, ¶40, 686 NW2d 430, 448)).

**Analysis and Decision**

[¶17.]     1.     **Whether the trial court erred in allowing "other acts" evidence under SDCL 19-12-5 (Rule 404(b)).**

[¶18.]     Mollers filed a motion in limine seeking to exclude any evidence regarding their activities as Duebendorfer's attorneys-in-fact relating to the POD beneficiary changes as well as evidence concerning Randy's attempt to terminate Stevens' farm lease. After a pretrial hearing and receiving briefs and arguments from both parties, the trial court denied Mollers' motion. At trial, both parties made reference to and discussed the POD beneficiary changes to the CD's and the farm lease. However, Mollers never objected to this testimony.

[¶19.]     Now on appeal, Mollers argue that the trial court erred in allowing the contestants' to introduce evidence of "other acts" under SDCL 19-12-5 (Rule 404(b)).

They specifically argue that the evidence relating to the changing of the POD beneficiaries on the CD's held by Duebendorfer to Randy and Kathy and the attempted termination of Stevens farm lease by Randy was "irrelevant and unfairly prejudicial to the ultimate detriment of the Mollers." However, because Mollers failed to object to this evidence at trial, they have failed to preserve this issue for appeal. [4]

[¶20.]     The law in effect at the time of trial was clear. "The purpose of a motion in limine is to prevent prejudicial evidence, argument, or reference from reaching the ears of the jury. However, a trial court's ruling on a motion in limine is preliminary and may change depending on what actually happens in trial." *Kappenman*, 2005 SD 96, ¶4, 704 NW2d at 39 (citing *Kolcraft Enterprises*, 2004 SD 92, ¶7, 686 NW2d at 437). "Alert practitioners must remain conscious to the danger of failing to make an adequate record at trial when a motion in limine has been earlier granted or denied." *Kolcraft Enterprises*, 2004 SD 92, ¶16, 686 NW2d at 441.

> The initial ruling by itself preserves nothing for appeal. To claim error based on the denial of a motion in limine, the trial court must allow, over renewed objection, that which the moving party sought to exclude to be presented to the jury. Where an in limine motion is denied but the evidence, argument, or reference

---

4.     The Court, in holding this issue waived on appeal today, recognizes that Supreme Court rule 06-67, Amendment of SDCL 19-9-3 (Rule 103(a)), effective July 1, 2006, provides in part: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." However, because this rule was not in effect at the time of the ruling in the present case, Mollers waive their right to appeal this issue by failing to object at trial.

is subsequently entered in the record without objection, there is no appealable issue, no reversible error.

*Kappenman*, 2005 SD 96, ¶4, 704 NW2d at 39 (citing State v. Red Star, 467 NW2d 769, 771 (SD 1991) (citing State v. Gallipo, 460 NW2d 739, 743 (SD 1990))) (additional citations omitted). *See also Kolcraft Enterprises*, 2004 SD 92, ¶16, 686 NW2d at 441 (holding "in the absence of an objection or an offer of proof during trial to the admission or refusal to admit challenged evidence, an appeal from a ruling on a motion in limine is waived") (citing Joseph v. Kerkvliet, 2002 SD 39, ¶7, 642 NW2d 533, 535).

[¶21.]     Mollers failed to object at trial to the introduction of the evidence concerning the changes to the CD's and the farm lease. Therefore, they failed to preserve this issue for appeal. Thus, it is deemed waived and we decline to address it.

[¶22.]     **2.     Whether the trial court erred in giving Jury Instruction 17.**

[¶23.]     Mollers argue that the trial court erred in giving Jury Instruction 17[5] for two reasons. First, they assert it was error for the trial court to conclude, as a

---

5.     Instruction 17, in its entirety, reads:

        FIRST, in this case you are instructed that a confidential relationship did exist between Kenneth Thomas Duebendorfer and Randy and Kathy Moller because the Mollers were the agents for Duebendorfer under the Power of Attorney at the time of the execution of the April 10, 2002 will. If you find that the Mollers actively participated in the preparation and execution of the will and that they unduly profited there from, then a presumption of undue influence arises. When this presumption of undue influence arises, the burden of proof shifts to the Mollers to show that they took no unfair advantage of Kenneth Thomas Duebendorfer in the creation of the will in order to rebut or defeat a finding that undue influence exists.

                                              (continued . . .)

matter of law, that a confidential relationship existed between Mollers and Duebendorfer. Second, they argue Instruction 17 confused the burden of proof with the burden of going forward with the evidence.

[¶24.] This Court "construe[s] jury instructions as a whole to learn if they provided a full and correct statement of the law." *Kappenman*, 2005 SD 96, ¶14, 704 NW2d at 40. Further, "the party charging that an instruction was given in error has the dual burden of showing that the instruction was erroneous and prejudicial. An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it." *Id.*

*Was Instruction 17 a misstatement of the law and therefore erroneous?*

---

(. . . continued)

If this presumption of undue influence arises, as set forth above, and if you determine that the Mollers did take unfair advantage of Kenneth Duebendorfer, then you shall find that Randy and Kathy Moller exercised undue influence over Kenneth Thomas Duebendorfer and check **Yes** on the Special Verdict form.

SECOND, if you determine that either 1) the Mollers did not actively participate in the preparation and execution of the April 10, 2002 will, or 2) that the Mollers did not unduly profit there from, then the contestants have the burden of proving the four elements set forth in Instruction No. 16 in order to establish that the will was the result of the undue influence of the Mollers.

If you find that all four of these elements have been proved, you shall check **Yes** on the Special Verdict Form. If you find that one or more of these four elements have not been proved, then you shall check **No** on the Special Verdict Form.

[¶25.]     Mollers first argue that Instruction 17 removed a question of fact from consideration by the jury. They assert that the trial court erred in instructing the jury that, because of the power of attorney, a confidential relationship did exist at the time of the execution of the April 10, 2002 will.

[¶26.]     Under our settled law: "[a] fiduciary relationship is founded on a 'peculiar confidence' and trust placed by one individual in the integrity and faithfulness of another. When such relationship exists, the fiduciary has a 'duty to act primarily for the benefit' of the other. 'Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.'" Ward v. Lange, 1996 SD 113, ¶12, 553 NW2d 246, 250 (citing High Plains Genetics Research, Inc. v. JK Mill-Iron Ranch, 535 NW2d 839, 842 (SD 1995)) (citations omitted). "The existence of a fiduciary duty and the scope of that duty are questions of law for the court." *Id.* Therefore, in South Dakota, as a matter of law, a fiduciary relationship exists whenever a power of attorney is created.

[¶27.]     This Court has held that "a confidential relationship is generally synonymous with a fiduciary relationship." Buxel v. First Fidelity Bank, 1999 SD 126, ¶14, 601 NW2d 593, 597 (citing Crane v. Centerre Bank of Columbia, 691 SW2d 423, 428 (MoCtApp 1985)) (citation omitted). Furthermore, a "confidential relationship is not restricted to any particular association of persons." Hyde v. Hyde, 78 SD 176, 186, 99 NW2d 788, 793 (1959). A "confidential relationship exists whenever a decedent has placed trust and confidence in the integrity and fidelity of another." *In the Matter of* Estate of Unke, 1998 SD 94, ¶16, 583 NW2d 145, 148

(citing *In re* Estate of Madsen, 535 NW2d 888, 892 (SD 1995)) (citations and internal quotations omitted).

[¶28.] It is undisputed that the Mollers were in a fiduciary relationship as of March 30, 2002, as a result of the execution of the power of attorney by Duebendorfer. In addition and equally important, both Randy and Kathy individually admitted at trial that from March 30, 2002, until Duebendorfer's death, each was in a confidential and fiduciary relationship with Duebendorfer. Kathy testified:

> Q: You agree also that you were in a confidential and fiduciary relationship with Kenneth once the power of attorney was executed in your favor on March 30, 2002?
> A: Correct.

Randy testified:

> Q: And you agree that from that time on, March 30, 2002, you were in a confidential and fiduciary relationship with Kenneth?
> A: Yes, I was.

Mollers cannot claim a version of the facts more favorable than that to which they testified at trial. *See* Overfield v. American Underwriters Life Ins. Co., 2000 SD 98, ¶19, 614 NW2d 814, 819; Western States Land & Cattle Co., Inc. v. Lexington Ins. Co., 459 NW2d 429, 434 (SD 1990). Therefore, because Mollers admit they were in a confidential and fiduciary relationship with Duebendorfer (and they clearly were), it was not error for the trial court to instruct the jury, as a matter of law, such a confidential relationship existed.

[¶29.] Because the trial court did not err in instructing the jury that a confidential relationship existed, we next address Mollers' second claim of error; that the trial court improperly instructed the jury regarding the burden of proof of

undue influence. Mollers assert that the trial court erred in instructing that the burden of proof shifted to them. They argue that only the burden of going forward with the evidence shifted to them.

[¶30.]     The relative burdens of the parties in contested will cases are set forth by statute. SDCL 29A-3-407 provides:

> In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and heirship. *Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.* If a will is opposed by the petition for probate of a later will revoking the former, it shall be determined first whether the later will is entitled to probate. If a will is opposed by a petition for a declaration of intestacy, it shall be determined first whether the will is entitled to probate.

(emphasis added). This statute clearly indicates that the party with the initial burden of proof has the ultimate burden of persuasion. Thus, the proponents of the will, Mollers, had the ultimate burden of persuasion as to the "due execution" of the will. That burden does not shift, but remains with them. Conversely, the contestants have the ultimate burden of persuasion to establish undue influence.

[¶31.]     Under this Court's settled law, "to establish the existence of undue influence a will contestant must prove four elements by a preponderance of the evidence: '(1) decedent's susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and (4) a result clearly showing the effects of undue influence.'" Estate of Dokken, 2000 SD 9, ¶27, 604 NW2d 487, 495 (quoting *Unke*, 1998 SD 94,

¶12, 583 NW2d at 148 (citing *In re* Estate of Elliott, 537 NW2d 660, 662-63 (SD 1995))).

[¶32.]     "A presumption of undue influence arises 'when there is a confidential relationship between the testator and a beneficiary who actively participates in preparation and execution of the will and unduly profits therefrom.'" *Id.* ¶28 (citing *Unke*, 1998 SD 94, ¶13, 583 NW2d at 148 (quoting *Madsen*, 535 NW2d at 892)). "When this presumption arises, the burden shifts to the beneficiary to show he took no unfair advantage of the decedent." *Id.* (citing *Unke,* 1998 SD 94, ¶13, 583 NW2d at 148 (citing *In re* Estate of Metz, 78 SD 212, 222, 100 NW2d 393, 398 (1960))). In addition, "[t]he finding of a confidential relationship shifts the burden to [the beneficiary] to show by a preponderance of the evidence that [he/]she took no unfair advantage of [the decedent] in the creation of the will[.]" *In re* Estate of Smith (*Smith II*), 520 NW2d 80, 83 (SD 1994) (citing *In re* Estate of Smith (*Smith I*), 481 NW2d 471, 475 (SD 1992)).[6]  However, "the burden of going forward with the evidence in an undue influence case does not shift to the beneficiary unless a presumption of undue influence is established." *Dokken,* 2000 SD 9, ¶28, 604 NW2d at 495 (citing *Unke*, 1998 SD 94, ¶13, 583 NW2d at 148) (emphasis omitted).

[¶33.]     Instruction 17 instructed the jury that because a confidential relationship existed, Mollers must show they took no unfair advantage of

---

6.     *Smith I* and *Smith II* predate the adoption of SDCL 29A-3-407.

Duebendorfer in the preparation and execution of his will. *Id.* Instruction 17 further instructed:

> if you find that the Mollers actively participated in the preparation and execution of the will and that they unduly profited there from, then a presumption of undue influence arises. When this presumption of undue influence arises, the burden of proof shifts to the Mollers to show that they took no unfair advantage of Kenneth Thomas Duebendorfer in the creation of the will in order to rebut or defeat a finding that undue influence exists.

This instruction allowed the jury to determine, 1) whether the contestants had established that Mollers had actively participated in the preparation and execution of the will, and 2) whether they unduly profited from their actions. It was only after making these two findings that the jury was instructed a presumption of undue influence was established. As per the holdings of *Dokken, Unke,* and *Smith II*, the burden then shifted to Mollers to rebut this presumption.

[¶34.] The jury was then further instructed that if they found Mollers did not rebut this presumption, they were to check yes on the special verdict form. However, if the jury determined that either 1) Mollers did not actively participate in the preparation and execution of the will, or 2) did not unduly profit from it, *i.e.* they rebutted the presumption, the jury were then instructed that the contestants "have the burden of proving the four elements set forth in Instruction No. 16 in order to establish that the will was the result of the undue influence of the Mollers." Thus, "the ultimate burden remain[ed] on the person contesting the will to prove the elements of undue influence by a preponderance of the evidence." *Unke*, 1998 SD 94, ¶13, 583 NW2d at 148 (citing *Madsen*, 535 NW2d at 893).

[¶35.]     Therefore, based on the forgoing, Instruction 17, as a whole, correctly states the law on undue influence and the shifting burden. As Instruction 17 was not a misstatement of law, this Court does not need to address whether the instruction was prejudicial.

[¶36.]     Affirmed.

[¶37.]     GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶38.]     ZINTER, Justice, concurs in part and concurs in result.

[¶39.]     MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.

ZINTER, Justice (concurring in part and concurring in result).

I

[¶40.]     I concur on issue 1 and that part of issue 2 concluding that there was no error in instructing the jury that a confidential relationship existed. As the Court points out, Mollers admitted that there was a confidential relationship, and therefore, they are in no position to argue otherwise on appeal.

[¶41.]     However, I disagree with the Court's analysis on the burden of proof. *See supra* ¶¶29-35. I disagree because the "FIRST" part of Instruction 17 instructed the jury that if a presumption of undue influence arose, the ultimate "burden of proof" shifted from the *contestants* (Hinds *et al.*) to the *proponents* (Mollers) of the will. However, under SDCL 29A-3-407, the ultimate burden of proof of undue influence was on the contestants. And, under SDCL 19-11-1 (Rule 301), even though the presumption of undue influence shifted the burden of going forward with the evidence to the proponents, the ultimate burden of proof should have remained

-16-

with the contestants. Therefore, this part of Instruction 17, shifting the ultimate burden of proof to the proponents, was erroneous as a matter of law. Nevertheless, because it was harmless error, I concur in result.

II

[¶42.]     The initial problem in this case is defining the "burden of proof" that shifted under Instruction 17. "The term 'burden of proof' is one of the 'slipperiest member[s] of the family of legal terms.'" Schaffer *ex rel.* Schaffer v. Weast, __ US __, __, 126 SCt 528, 533, 163 LEd2d 387 (2005) (quoting 2 J. Strong, *McCormick on Evidence* § 342, at 433 (5thed 1999)). The difficulty is due, in part, to the fact that the term has historically "encompassed two distinct burdens: the 'burden of persuasion,' *i.e.*, which party loses if the evidence is closely balanced, and the 'burden of production,' *i.e.*, which party bears the obligation to come forward with the evidence at different points in the proceeding." *Id.* at 533-34 (citation omitted). In *McKiver v. Theo. Hamm Brewing Co.*, this Court explained the importance of this distinction in cases where a presumption causes the burden of going forward with the evidence to shift:

> This burden of going forward with the evidence differs from the burden of proof. A presumption casts upon the person against whom it is applied the duty to go forward with the evidence on the point to which the presumption relates. The burden of proof, meaning the duty of establishing the truth of a claim by such quantum of proof as the law requires, rests upon the party having the affirmative of an issue. The latter never shifts during the course of a trial, while the burden of going forward with the evidence may shift.

67 SD 613, 618, 297 NW 445, 447 (1941) (citing Peters v. Lohr, 24 SD 605, 124 NW 853, 855 (1910)). Considering this distinction, the issue is whether the "FIRST"

part of Instruction 17, providing that "the burden of proof shift[ed] to the Mollers," erroneously shifted to them the ultimate burden of persuasion on undue influence.

[¶43.]     In determining whether an instruction is erroneous, "our standard of review requires us to construe [the instructions] as a whole to find 'if they provided a full and correct statement of the law.'"  Steffen v. Schwan's Sales Enters., Inc., 2006 SD 41, ¶8, 713 NW2d 614, 617 (quoting First Premier Bank v. Kolcraft Enters., Inc., 2004 SD 92, ¶40, 686 NW2d 430, 448 (citations omitted)).  In reviewing the jury instructions as a whole, it is helpful to compare the "SECOND" part of Instruction 17 dealing with undue influence cases in general, with the "FIRST" part of Instruction 17 dealing with the presumption of undue influence when a confidential relationship arises.

[¶44.]     The "SECOND" part of Instruction 17 correctly informed the jury that "the *contestants* had the *burden of proving* the four elements set forth in Instruction 16 in order to establish that the will was the result of the undue influence of the Mollers."  (Emphasis added.)  Furthermore, Instructions 15 and 16 indicated that the burden of "proving" the elements meant that the contestants bore the ultimate burden of persuasion.  Instruction 16 provided:  "To establish the existence of undue influence, the contestant must prove by the greater convincing force of the evidence four elements . . . ."[7]  Similarly, Instruction 15 emphasized that the contestants

---

7.     Jury Instruction 16 stated:

> To establish the existence of undue influence, the contestant must prove by the greater convincing force of the evidence four elements:
> (1) That at the time the Will under question was prepared and signed by Kenneth Duebendorfer, he was susceptible to undue influence;
>                                              (continued . . .)

bore the ultimate burden of persuasion.[8]  Thus, the jury was correctly instructed in Instructions 15, 16, and the "SECOND" part of 17 that the *contestants* bore the ultimate burden of persuasion on undue influence.[9]

[¶45.]    In contrast, the "FIRST" part of Instruction 17, dealing with undue influence in confidential relationships, incorrectly shifted the burden of persuasion from the contestants to the proponents.  The instruction indicated that if a

---

(. . . continued)

> (2) That the Respondents, Randy Moller and Kathy Moller, had sufficient opportunity to exert such influence and effect the wrongful purpose;
> (3) That the Respondents, Randy Moller and Kathy Moller, had a disposition to do so for an improper purpose; and
> (4) That a result was produced in the April 10, 2002, Will, which shows the effects of such influence.

8.    Jury Instruction 15 stated:
> In civil actions, the party who asserts the affirmative of an issue must prove that issue by greater convincing force of the evidence.
> Greater convincing force means that after weighing the evidence on both sides there is enough evidence to convince you that something is more likely true than not true.  In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue has the greater convincing force, then your finding upon the issue must be against the party who has the burden of proving it.

9.    This Court has noted*:*

> Under our settled law, to establish the existence of undue influence a will *contestant* must prove four elements by a *preponderance of the evidence*:  "(1) decedent's susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and (4) a result clearly showing the effects of undue influence."

> *Matter of* Estate of Unke, 1998 SD 94, ¶12, 583 NW2d 145, 148 (emphasis added) (citing *Matter of* Estate of Elliott, 537 NW2d 660, 662-63 (SD 1995)).  *See also* SDCL 29A-3-407 (stating that the contestants have the ultimate burden of establishing undue influence).

presumption of undue influence arose under the confidential relationship test,[10] the

*burden of proof* shifted to Mollers, the proponents. Instruction 17 stated:

> [W]hen this presumption of undue influence arises, the *burden of proof shifts* to the Mollers to show that they took no unfair advantage of Kenneth Thomas Duebendorfer in the creation of the will in order to rebut or defeat a finding that undue influence exists.

(Emphasis added.) This was an incorrect statement of the law because, under

Instructions 15 and 16, this shifted the ultimate burden of persuasion to the

proponents. As the Court itself acknowledges, SDCL 29A-3-407 requires that the

contestants carry that "ultimate burden of persuasion" on undue influence. SDCL

29A-3-407, *see supra* ¶30.[11] What is not recognized is that even though the creation

---

10.  Some jurisdictions provide that the burden shifts simply when a confidential relationship exists. 3 William J. Bowe & Douglas H. Parker, *Page on Wills* § 29.80, at 706 (3ded 2004). Other jurisdictions hold that the existence of a confidential relationship does not shift the burden "in the absence of evidence of other facts of imposition" such as when the beneficiary takes "an active part in preparing the will." *Id*. at 707.

In this jurisdiction, the existence of a confidential relationship does not, in and of itself, create a presumption of undue influence. The presumption of undue influence does arise if the beneficiary actively participated in the preparation and execution of the will and unduly profited therefrom. *Matter of* Estate of Elliott, 537 NW2d 660 (SD 1995); *Matter of* Weickum's Estate, 317 NW2d 142 (SD 1982); *Matter of* Heer's Estate, 316 NW2d 806 (SD 1982); *In re* Anders Estate, 88 SD 631, 226 NW2d 170 (1975); *In re* Hobelsberger's Estate, 85 SD 282, 181 NW2d 455 (1970).

11.  The Court's opinion acknowledges that under this statute, the ultimate burden of persuasion of undue influence remains on the contestants throughout the entire proceeding. *Supra* ¶30. But, two paragraphs later the Court's opinion inconsistently states: "In addition, '[t]he finding of a confidential relationship shifts the burden to [the beneficiary and proponent] to show by a *preponderance of the evidence* that [he/]she took no unfair advantage of [the decedent] in the creation of the will[.]'" *See supra* ¶32 (emphasis added). Thus, after first indicating that under SDCL 29A-3-407

(continued . . .)

#23833

of a presumption of undue influence shifts the burden of going forward with the

evidence, it does not shift the ultimate burden of persuasion.[12] SDCL 19-11-1 (Rule

301) clearly explains that:

> a presumption imposes on the party against whom it is directed
> *the burden of going forward with evidence* to rebut or meet the
> presumption, *but does not shift to such party the burden of proof
> in the sense of the risk of nonpersuasion*, which remains
> throughout the trial upon the party on whom it was originally
> cast.

_____

(. . . continued)
the ultimate burden of establishing undue influence by a preponderance of
the evidence is on the *contestants*, the opinion inconsistently states that it
shifts to the proponents.

12.    No doubt, our case law has been a source of confusion on this point.
       *See infra* n15.  However, we should clarify that the creation of a
       presumption only shifts the burden of going forward with the evidence.
       This Court has stated:

> Once [a confidential relationship] ha[s] been established, "*the
> burden of 'going forward with the evidence'* shifts to the
> beneficiary [the proponent] to show that he took no unfair
> advantage of his dominant position."

*Matter of* Estate of Borsch, 353 NW2d 346, 349 (SD 1984) (citing *In re*
Metz' Estate, 78 SD 212, 222, 100 NW2d 393, 398 (1960)) (emphasis
added).  And:

> [I]f will contestants can establish the existence of a confidential
> relationship between the testatrix and the beneficiary under the
> contested will, *the burden of going forward with the evidence*
> shifts to the beneficiary [the proponent] to show that he took no
> unfair advantage of his dominant position.

*Elliott*, 537 NW2d at 663 (emphasis added) (citations omitted).
However, the ultimate burden of proof does not shift:  "The ultimate
burden remains on the contestant to prove the elements of undue
influence by a preponderance of the evidence."  *In re* Estate of Dokken,
2000 SD 9, ¶28, 604 NW2d 487, 495 (citing *Unke*, 1998 SD 94, ¶12, 583
NW2d at 148).

-21-

(Emphasis added.)[13]  Therefore, Instruction 17 is erroneous as a matter of law

because it improperly shifted the ultimate burden of persuasion to Mollers, the

*proponents* of this will.[14]

---

13.    The adoption of this rule of evidence in 1978 did not change long-standing
       South Dakota law on the burden shifting effect of a presumption.  As this
       Court remarked in 1967:

       "A presumption is not evidence of anything, and only relates to a
       rule of law as to which party shall first go forward and produce
       evidence sustaining a matter in issue.  A presumption will serve
       as and in the place of evidence in favor of one party or the other
       until prima facie evidence has been adduced by the opposite
       party; but the presumption should never be placed in the scale
       to be weighed as evidence.  The presumption, when the opposite
       party has produced prima facie evidence, has spent its force and
       served its purpose, and the party then, in whose favor the
       presumption operated, must meet his opponent's prima facie
       evidence with evidence, and not presumptions.  A presumption
       is not evidence of a fact, but purely a conclusion."  Peters v.
       Lohr, 24 SD 605, 609, 124 NW 853, 855 (1910).
       The function of a presumption was discussed by Judge Rudolph
       in  *Honrath v. New York Life Insurance Co.*, 65 SD 480, 275 NW
       258 (1937), 112 ALR 1272, and *Headlee v. New York Life Ins.
       Co.*, 69 SD 499, 12 NW2d 313 (1943), quoting extensively from
       *Wigmore on Evidence*, 3rd Ed., § 2491, "the peculiar effect of a
       presumption 'of law' (that is, the real presumption) is merely to
       invoke a rule of law compelling the jury to reach the conclusion
       in the absence of evidence to the contrary from the opponent."
       A presumption takes the place of evidence "unless and until
       evidence appears to overcome or rebut it, and when evidence
       sufficient in quality appears to rebut it the presumption
       disappears and thereafter the determination of the issues
       depends upon the evidence with the requirement as in other
       civil actions that the party having the affirmative of the issue
       involved in order to succeed shall sustain his position by a
       preponderance of the evidence." *In re* Drake's Estate, 150 Neb
       568, 35 NW2d 417, 423 [1948].

       King v. Johnson Bros. Const. Co., 83 SD 69, 75-76, 155 NW2d 183, 186-
       87 (1967).

[¶46.] The Court, however, does not find error because "[I]nstruction [17] *allowed* the jury to determine 1) whether the contestants had established that Mollers had actively participated in the preparation and execution of the will, and 2) whether they unduly profited from their actions." *Supra* ¶33 (emphasis added). However, *allowing* the jury to consider elements of a cause of action does not resolve an error in instructing the jury as to which party bore the burden of proof on those elements.

[¶47.] The Court further suggests there was no error because, if the presumption of undue influence was established, the burden shifted to the Mollers to rebut this presumption "per the holdings of *Dokken*, *Unke*, and *Smith* II." *Supra* ¶¶33-34. However, both *Dokken* and *Unke* recognized that the *ultimate* burden of proof remains with the contestants (Hinds). *See Dokken*, 2000 SD 9, ¶28, 604 NW2d at 495-96; *Unke*, 1998 SD 94, ¶13, 583 NW2d at 148. Furthermore, to the extent there is contrary language in those decisions (or our other cases, such as

---

(. . . continued)

14. In an analogous case decided by the Nebraska Supreme Court, the jury instructions placed the burden of persuasion on the contestants. Estate of McGowan, 197 Neb 596, 601, 250 NW2d 234, 237 (1977). However, the contestants argued that "the establishment of the presumption shifted the burden of proof from [them] to the proponent." *Id.* The Nebraska Court concluded that the instructions were not erroneous, holding "in a will contest the burden of proof or the risk of nonpersuasion on the issue of undue influence is on the contestant and remains there throughout the trial." *Id.* at 604-05, 250 NW2d at 239.

*Smith* I and *Smith II),* those cases did not properly consider SDCL 29A-3-407 and Rule 301, and therefore, they should be overruled.[15]

[¶48.]        In the final analysis, however, I concur in result because the error was not prejudicial. An erroneous instruction is prejudicial if the party contending that the instruction is erroneous proves that in all probability the instruction "produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it." *Supra* ¶24 (quoting *Kappenman,* 2005 SD 96, ¶14, 704 NW2d at 40). Here, the jury was properly instructed on the burden of proof for the general elements of undue influence in the "SECOND" part of Instruction 17. And, the facts of this case satisfied those elements as a matter of law. Moreover, the evidence of undue influence under the confidential relationship theory was even more persuasive. *See* Bienash v. Moller, 2006 SD 78, 721 NW2d 431. Considering the strength of the evidence in this case, Mollers have failed to demonstrate that the erroneous instruction, in all probability, produced some effect on the verdict and was harmful to their rights.

---

15.    *Smith I* and *Smith II* both incorrectly state that "[t]he finding of a confidential relationship shifts the burden to [the beneficiary] to show *by a preponderance of the evidence* that she took no unfair advantage of [the testator]." *Smith I,* 481 NW2d at 475 (emphasis added); *Smith II,* 520 NW2d at 83 (quoting *Smith I,* 481 NW2d at 475). This language should be overruled.

Similarly, this Court stated in *Estate of Borsch* that the presumption remains "even though the beneficiary introduces evidence rebutting the presumption." 353 NW2d at 351. This language should also be overruled in light of Rule 301, which provides that "[w]hen substantial, credible evidence has been introduced to rebut the presumption, *it shall disappear* from the action or proceeding, and the jury shall not be instructed thereon." (Emphasis added.)